Mary Busser, Plaintiff-Appellee, v. Donald Noble, Harold K. Pieper, Administrator of Estate of Donald E. Pieper, Deceased, Jack Schlueter et al. On Appeal of John L. Moore, Defendant-Appellant.

Gen. No. 10,777.

Second District.

January 31, 1956.

Released for publication February 17, 1956.

■■■■■■■■■■

Jacobs, Gorton & Rooney, and Wyatt Jacobs, all of Chicago, for appellant, John L. Moore; Joseph B. Lederleitner, of Chicago, of counsel.

Warner and Warner, of Dixon, for appellee, Mary Busser; Henry C. Warner, and George F. Nichols, both of Dixon, of counsel.

PRESIDING JUSTICE DOVE delivered the opinion of the court.

Four automobiles were involved in a highway accident in Lee County shortly after midnight on the morning of October 18, 1952. The plaintiff, Mary Busser, was a guest passenger in one of the cars which was being driven by Donald Pieper. As a result of the accident, Donald Pieper was killed and Mary Busser was injured. On January 22, 1954, the instant complaint, consisting of twelve counts, was filed by Mary Busser to recover damages for the injuries which she sustained.

Donald Noble, Robert Lizer, and Jack Schlueter were the drivers of the other cars involved in the accident, and count one of the complaint sought a recovery from Noble, and counts two, three, and four sought a recovery from Lizer, Schlueter, and Pieper respectively. Counts five and six sought a recovery against defendant, Harold F. Considine. Counts seven and eight were directed against defendant, John L. Moore. Count nine sought a recovery against Ruth K. Carney as the owner of the premises where Moore conducted his tavern. Counts ten and eleven were directed against Frank Dempsey as the owner and operator of a tavern on certain described premises, and count twelve made Violet Dempsey, wife of Frank Dempsey, a defendant and sought to have a conveyance executed by Frank Dempsey to Violet Dempsey to certain described premises set aside as a fraudulent conveyance made with the intent to hinder and delay the plaintiff in collect-

ing any judgment she might obtain against Frank Dempsey.

The same day the complaint was filed a summons was issued and on January 23, 1954, was duly served on the defendant, John L. Moore. February 15, 1954, was the third Monday in February and the first return day. The defendants, who were served, other than defendant Moore, appeared and filed answers or motions to dismiss. Defendant Moore did not appear, and on February 17, 1954, on the motion of the plaintiff, defendant Moore was defaulted, and on the same day a hearing was had before the court resulting in a judgment in favor of the plaintiff and against the defendant, John L. Moore, for $15,000 and costs.

On March 8, 1954, Moore filed his motion, supported by affidavits, to set aside the judgment rendered against him on February 17, 1954, and for leave to plead. This motion was heard and denied on March 16, 1954, and this appeal follows.

The only counts of the complaint involved in this appeal are counts seven and eight. Count seven alleged that on October 18, 1952, at approximately 12:30 o'clock a. m., Donald Noble was operating an automobile in a southerly direction upon Route 26 approximately two and one-half miles south of Dixon; that at the same time and place, Donald Pieper was operating an automobile in a northerly direction and Robert Lizer was operating an automobile in a northerly direction; that plaintiff was riding as a guest passenger in the motor vehicle being operated by Donald Pieper; that on October 17th and 18th, 1952, the defendant Moore owned and operated a tavern known as The Royal Palms and was engaged in selling alcoholic liquor, and upon those dates he sold or gave alcoholic liquor to Donald Pieper, a minor; that Pieper consumed said intoxicating liquor, and that said liquor caused or contributed to his intoxication at the time and place in question; that upon

271

that occasion Donald Pieper did one or more of the following acts: (a) negligently drove his car while under the influence of intoxicating liquor; (b) negligently drove his car at a speed that was greater than reasonable or proper having regard for traffic and the use of the way; (c) negligently failed to drive his car upon the right half of the roadway; (d) negligently failed to keep his car under control; and (e) negligently failed to keep a proper lookout. This count then charged that as a direct and proximate result of the conduct aforesaid, the car in which the plaintiff was riding was struck and rolled upon its side, and the plaintiff was thrown in and about the car and upon the ground and thereby seriously injured. Count eight is the same as count seven with an additional paragraph which alleges that said sale of liquor to Donald Pieper was wilful and wanton and concluded that plaintiff was therefore entitled to recover both compensatory and exemplary damages against the defendant.

In support of the verified motion of the defendant to vacate the judgment, the affidavits of himself and F. J. Schukies were filed. The affidavit of the defendant states that immediately after he was served with summons in this case on January 22, 1954, he took the summons to the office of L. J. Welch Company at Dixon, through which he had purchased a policy of insurance; that upon the same day, R. H. Schmitt, of the Welch Company, sent the summons to Fidelity Insurance Agencies, Inc., at its address in Chicago; that on January 25, 1954, Fidelity Insurance Agencies advised the Welch Company it found no claim in their file involving the plaintiff in this suit and, therefore, could not refer the matter to the insuring company until further particulars were received; that on January 27, 1954, said R. H. Schmitt, of the Welch Company, wrote the Fidelity Insurance Agencies confirming a telephone conversation in which the Fidelity

Insurance Agencies had stated that the claim had been located; that on January 28, 1954, the Welch Company was advised by Fidelity Insurance Agencies that the summons in this case had been duly forwarded to the claim department of the insuring company. In this affidavit the defendant further stated that at no time did he hear from the insuring company, but was advised by Fidelity Insurance Agencies that his interests would be protected; that on February 11th or 12th, 1954, he called Fidelity Insurance Agencies in Chicago and again advised them of the return day of this summons and was assured the matter would be taken care of.

The affidavit of F. J. Schukies stated that he was the claim examiner for the Exchange Insurance Association with offices at 175 West Jackson Boulevard, Chicago; that Exchange Insurance Association issued policy No. XLL11690 covering defendant as licensee, doing business as The Royal Palms; that this policy was sold by Fidelity Insurance Agencies, Inc., of Chicago; that the office of Exchange Insurance Association in Chicago is the Home office and that all documents, correspondence and summons relating to the outstanding policies of the company are delivered to the Home office in Chicago; that on January 28, 1954, the summons in this case was received in the mail room of affiant, having been received by the Insurance Exchange Association on January 25, 1954; that thereafter it was placed on the desk of affiant, along with some fifty-nine other files, but when or by whom affiant was unable to state; that the clerks in affiant's office are instructed to red-flag all matters which require immediate attention, but no such red marker was placed on this file; that affiant's attention was first called to this summons on February 18, 1954, after he received a telephone call informing him of the fact that this default judgment had been entered on February 17, 1954; that upon receipt of this information, affiant

273

contacted the law firm of Fearer and Nye requesting them to represent defendant Moore, and when informed that they were unable to do so, arrangements were made with present counsel to represent appellant.

The Civil Practice Act provides that the court in which a judgment is rendered may, in its discretion, before final judgment, set aside any default and may, within thirty days after entry thereof, set aside any judgment or decree upon good cause shown by affidavit upon such terms and conditions as shall be reasonable (Ill. Rev. Stat. 1953, Chap. 110, sec. 50, par. 174, sub-par. 7 [Jones Ill. Stats. Ann. 104.050, subd. (7)]). Our Practice Act further provides that its provisions shall be liberally construed to the end that controversies may be speedily and finally determined according to the substantive rights of the parties (Ill. Rev. Stat. 1953, Chap. 110, par. 128, sec. 4 [Jones Ill. Stats. Ann. 104.004]).

 A motion to set aside a judgment and vacate an order of default is addressed to the sound legal discretion of the court in which it is made and unless there has been a palpable abuse of such discretion an Appellate Court should not interfere. If, however, the action of the court to which the application is made is unjust and oppressive and has resulted in a substantial injury to appellant, such action will be reversed on review. Such motion or application should show a meritorious defense and a reasonable excuse for not having made that defense in due time. (Hitchcock v. Herzer, 90 Ill. 543.)

In Mason v. McNamara, 57 Ill. 274, the court, after stating that as a general rule the Supreme Court would not review the action of the lower courts in matters of discretion, went on to observe that cases may arise in which there has been such a state of facts as to call upon the upper court to interpose, to promote justice, by reviewing the decision of the circuit court even in the exercise of discretionary powers. The court then

said (p. 277): "As we understand the long and well settled practice in this state, it has always been liberal in setting aside defaults at the term at which they were entered, where it appears that justice will be promoted thereby. . . . where it appears by affidavit, that the party has a defense to the merits, either to the whole or a material part of the cause of action, it has been usual to set aside the default, if a reasonable excuse is shown for not having made the defense. . . . In such cases the object is that justice be done between the parties, and not to permit one party to obtain and retain an unjust advantage."

In McMurray v. Peabody Coal Co., 281 Ill. 218, at p. 226, the court said: "It has been the long and well established practice in this state for courts to be liberal in setting aside defaults at the term at which they are entered where it appears that justice will be promoted thereby."

In City of Moline v. Chicago, B. & Q. R. Co., 262 Ill. 52 at p. 65, in reversing a judgment and remanding the cause with directions to set aside the judgment of the lower court in a special tax proceeding and permit appellant to file objections to the confirmation of the tax, the court said: "Under the long and well settled practice in this state the courts have been liberal in setting aside defaults at the term at which they were entered where it appears that justice will be promoted thereby. When it appears by the affidavit filed in support of the motion that the party has a defense to the merits, either to the whole or a material part of the cause of action, it has been usual to set aside the default if a reasonable excuse is shown for not having made the defense."

In Sempier v. Goemann, 165 Wis. 103, 161 N. W. 354, it appeared that a summons and a copy of a complaint by which plaintiff sought to recover for personal injuries was served on one defendant in April, 1914, and upon the other defendant on May 2, 1914. The defend-

ants turned these papers over to an agent of the Royal Indemnity Insurance Company and claim to have received and relied upon the assurance of such agent that the insurance company would look after the matter and defend the lawsuit if necessary. Thereafter plaintiff's attorney wrote one of the defendants on June 3, 1914, calling attention to the service and that the time for answering had expired, but no answer to this letter was received. About July 6, 1914, a personal interview was had by counsel for the plaintiff with one of the defendants and the agent of the insurance company and the situation was discussed. On October 16, 1914, the defendants were defaulted and a hearing had and a verdict was returned against the defendants. The defendants, learning of this through a newspaper account, immediately consulted counsel and an application was made to have the proceedings opened and they be allowed to defend. This application was granted and in affirming the order of the trial court, the Supreme Court stated it was satisfied from the record that "in so doing, the court acted well within the field of judicial discretion."

In Nash v. Treat, 45 Mont. 250, 122 Pac. 745, it appeared that the complaint contained two counts, the first against the defendant, D. E. Treat, and the second count against the said D. E. Treat and his wife. On July 17, 1911, the summons and a copy of the complaint were served on the wife, at which time her husband promised her that he would consult an attorney and enter a defense. He did not do so and on August 12, 1911, a default was taken and judgment entered against both defendants. On September 8, 1911, the wife filed her motion to set aside the default and vacate the judgment. The trial court sustained the motion and in affirming that order, the Supreme Court of Montana said that the single question presented by the record was whether the wife's failure to appear because of the promise of her codefendant husband, was excusable

neglect. In the course of its opinion, the court said: "While the courts should adhere to the rule that a party who has suffered a default ought not to have relief except upon showing a substantial excuse for his apparent neglect because the adverse party is prima facie justly entitled to the advantage which he has secured by the default, yet they should not indulge in refined distinctions or assign importance to matters of form, which might result in a denial of justice. Each case must be determined upon its own facts, and when the motion is made promptly and is supported by a showing which leaves the court in doubt or upon which reasonable minds might reach different conclusions, the doubt should be resolved in favor of the motion. . . . It is the general rule that when a judgment has been rendered against a defendant who is in default for the reason that another person upon whom he has relied to attend to the defense for him, or who is chargeable with that duty by virtue of the relation of the parties, has neglected to do so, relief will be granted on the ground of excusable neglect. . . . Viewing the case as a whole, we do not think the court abused its discretion in holding that the neglect of the defendant was excusable."

Hinz v. Northland Milk & Ice Cream Co., 237 Minn. 28, 53 N.W.2d 454, was an appeal from an order denying defendant's motion to open a default judgment. It appeared in that case that the summons and complaint were served on the defendant on December 17, 1951, and on December 20, 1951, were forwarded by the defendant to its insurer. The insurer mislaid the papers with the result that they were not forwarded to the attorneys for answering until December 29, 1951. On that day, plaintiff filed an affidavit to the effect that no answer had been filed and the matter was set for hearing for January 2, 1952. On that day, defendant's attorney requested the plaintiff's attorney for an extension of time to answer, but the request was refused and

default was entered. On the same day, defendant served an unverified answer on the plaintiff, but didn't appear at the default hearing. On the following day, defendant obtained and served an order to show cause—accompanied by a notice of motion—why the judgment should not be opened and why the answer served the day before should not be permitted to stand. Upon the denial of this motion and the discharge of the order to show cause, the defendant appealed. In reversing the order of the trial court, the court quoted from the applicable provision of the Minnesota statute which provides, "The court, in its discretion, may likewise permit an answer or reply to be made, or other act to be done, after the time limited therefor by this chapter, or by its order may enlarge such time; or at any time within one year after notice thereof, in its discretion, may relieve a party from any judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect," and then said: "It appears, as already stated, that defendant, with reasonable promptness, delivered the summons and complaint to its insurer, which inadvertently mislaid the papers so that they were not forwarded to the attorney for the preparation of an answer until two days after the time for answering had expired, or on December 29th, the Saturday preceding New Year's Day. By reason of the holidays, defendant's attorney neglected to interpose an answer or to communicate with plaintiff's attorney by telephone or otherwise prior to the reopening of business on January 2nd, the day on which plaintiff's action came on for hearing as a default matter. Plaintiff's attorney, on January 2nd, refused to grant an extension of time to answer on the ground that his client and witnesses were already on the way to the hearing and it was too late to intercept them. Immediately after the default hearing, judgment for $250 was en-

tered in plaintiff's favor. The files show that defendant's motion to open the judgment accompanied by an order to show cause was served on January 3rd. Defendant's attorney, by his affidavit, certified that defendant has a good defense on the merits. Where a defendant with reasonable promptness delivers the summons and complaint to its insurer which by contract is obligated to defend the suit, the negligence of the insurer in failing to forward the papers to the attorney for answering until shortly after the time for answering has expired, is not to be imputed to defendant so as to bar the opening of a default judgment where, in the exercise of a sound judicial discretion, it appears that defendant, after receiving notice, acted with diligence, has a defense on the merits, and where, as here, no substantial prejudice will result to plaintiff. . . . The discretionary power of the court to open a default judgment is not to be extended so as to encourage loose practice or to be so limited as to make orderly procedure an end in itself rather than a means by which justice is administered. Although justice delayed is justice denied, promptness in the dispatch of causes is not, for the sake of saving a few hours or even a few days, to be pushed with a zeal which does little more than put a premium on the efforts of one litigant to beat another to the draw and thus avoid a trial on the merits. An Appellate Court is reluctant to interfere with the exercise by the trial court of its discretion in the opening of judgments; but in this case, taking all the circumstances into consideration, it is clearly our duty to order a reversal."

King v. Mitchell, 188 Ore. 434, 16 A.L.R.2d 1128, was an action brought by a wife to recover damages for loss of consortium of plaintiff's husband injured by an automobile owned by defendant Hines Lumber Company and operated by defendant Mitchell, an employee of said Lumber Company. The alleged injuries were

sustained on August 30, 1943, and the complaint was filed October 3, 1947. Both defendants were served with a summons and a copy of the complaint on October 20, 1947. The Lumber Company appeared, filed a demurrer to the complaint, which was heard and sustained and a judgment entered in favor of the Lumber Company. Mitchell defaulted and a default order was entered against him on November 4, 1947. On May 12, 1948, judgment was rendered by default in favor of the plaintiff and against Mitchell for $12,500. On May 17, 1948, Mitchell moved to vacate the judgment, which motion was heard and denied and Mitchell appealed. The affidavit filed by Mitchell in support of his motion to vacate the judgment was to the effect that immediately after being served with the summons and complaint he delivered the same to Pat Maitland, the Safety and Personnel Director of the Lumber Company and was told that he would arrange with the Lumber Company for a proper defense of the action and Mitchell relied upon this assurance. It further appeared that through some misunderstanding the attorney for the Lumber Company's insurer confined its defense of the action to that of the Lumber Company alone. In reversing the judgment of the trial court, the Supreme Court cited the Oregon statute to the effect that the trial court may, in its discretion, and upon terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect. The court then said that the discretion of which the statute speaks is a legal discretion to be exercised in conformity with the spirit of the law and in a manner to subserve and not to defeat the ends of justice; that the statute was to be construed liberally to the end that every litigant shall have his day in court and his rights and duties determined only after a trial upon

the merits of the controversy. The court then went on to say: "The whole controversy centers upon the question whether the defendant Mitchell's showing of 'mistake, inadvertence or excusable neglect' was such that it was an abuse of discretion on the part of the court to refuse to relieve him from the judgment. In our opinion, Mitchell was entirely warranted in relying upon the assurance of Maitland that the Lumber Company would defend the action for him. It is not denied that Maitland was 'the person directly responsible in said company for the handling of such matters.' It is the practice in modern industry, where an employer and his employee are sued by a third party for injuries claimed to have been caused by the employee's negligence in the operation of a motor vehicle on the business of the employer, for the latter to undertake the defense of the action for both. This is a fact of common knowledge. Almost universally, as in the present instance, the employer is protected by public liability insurance, which covers the employee as well as himself in such cases, and the insurance carrier provides the defense for both. Only an exceptionally untutored person in Mitchell's position would have been ignorant of these facts, or would have thought it necessary to retain his own lawyer for the defense of the action. What Mitchell did was what any normal man in his position—what 'a man of ordinary prudence' (Freeman, op. cit., 484, § 243)—would have done. Since this is so, we can conceive of no good reason why the judgment should not have been vacated. There are many cases in the books in which reliance by one party on another to look after the defense of an action for him has been held to be ground for vacating a default judgment. . . . Although the precedents are useful as guides for decision, one case can hardly be said to control another, since it is doubtful whether two cases are to be found with identical facts. Each case must

281

be determined, as we have said, on its own peculiar facts. 'The question always is,' Mr. Freeman says, 'was the defendant reasonably justified under the circumstances in relying upon such a promise, or, in other words, was his neglect to attend to the matter himself, excusable.' Freeman, op. cit. 492 § 246."

In the recent case of Charles Ford & Associates of the Midwest, Inc. v. Goldberg, 7 Ill.App.2d 241, 129 N.E.2d 337, the court held that the Municipal Court of Chicago had the power, on an unverified application made within thirty days, to vacate an order of dismissal, to reinstate the cause of action and grant leave to file instanter an amended statement of claim and under the circumstances shown the trial court abused its discretion in denying such application. In its opinion the court calls attention to the fact that former sub-par. 7 of sec. 50 of the Civil Practice Act in effect at the time the motion in the instant case was determined, is now section 50 (6) of the Practice Act [Ill. Rev. Stats., 1955, ch. 110, § 50, subd. (6); Jones Ill. Stats. Ann. 104.050, subd. (6)] effective January 1, 1956, and the present act omits the language "upon good cause shown by affidavit."

Counsel for appellee state that the question of whether neglect of a summons by an insurance company excuses a default has been before the Appellate Courts of this state several times and, without exception, the court has held that it does not. Counsel cite and call to our attention Chmielewski v. Marich, 2 Ill.2d 568; Gustafson v. Lundquist, 334 Ill. App. 287; Farber v. Bolotnikoff, 131 Ill. App. 345; Mendell v. Kimball, 85 Ill. 582; Schultz v. Meiselbar, 144 Ill. 26; and Hahn v. Gates, 169 Ill. 299, and insist that if this judgment is reversed, we overrule the Supreme Court and refuse to follow our own previous decision. We have read and considered these cases. The motions in the Chmielewski and Gustafson cases were filed after the thirty-day period had elapsed and the facts in the

other cases are distinguishable from the facts as disclosed by this record.

■ ■ We recognize that where a party is served with process and fails to act from negligence or without any reasonable excuse, he has no right to insist that he be permitted to defend. In the instant case defendant paid attention to this summons. He did not treat it with indifference. He did just what the ordinary individual would do. He delivered it to the agent of his insurance carrier. He thereafter made repeated inquiries concerning it and was assured his interests would be taken care of. His conduct was not inexcusable. The power to set aside a default and permit a defendant to have his day in court is based upon substantial principles of right and wrong and is to be exercised for the prevention of injury and the furtherance of justice. (31 Am. Jur. 279.) The question in the instant case is whether defendant was reasonably justified under the circumstances in relying upon the promise or statements of his insurance agent. We think he was. His neglect to attend to the matter himself was excusable. While the facts in Loomis v. Tadlock, 1 Ill.App.2d 298, and Rowe v. Mardis, 4 Ill.App.2d 81, 123 N.E.2d 340, are distinguishable from the facts in the instant case, what the courts held is persuasive.

■ It is finally insisted by counsel that the defendant was not diligent in the instant case because eighteen days elapsed between default and the motion. There is no merit in this contention. As soon as defendant learned of the default, he contacted those who had assured him that his interests would be taken care of. The firm of lawyers first contacted were unable to represent defendant and there was a short delay in securing present counsel.

The affidavits in our opinion set forth a meritorious defense. The trial court so treated them and based its conclusion on what it considered the inexcusable negligence on the part of the .defendant. The trial court

283

erred in so holding and its judgment is reversed and the cause remanded with directions to enter an order vacating the default and permitting appellant to answer counts seven and eight of the complaint.

Reversed and remanded with directions.

EOVALDI and CROW, JJ., concur.