**Otis Spencer, Plaintiff-Appellee, v. American United Cab Association, a Corporation, Irv Friedman and Joseph Matenko, Defendants-Appellants.**

**Gen. No. 49,913.**

First District, First Division.

May 10, 1965.

Rehearing denied June 14, 1965.

Miller, Schneider & Galasso, of Chicago, for appellants.

Sherman Dickholtz, of Chicago, for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

This is an appeal by defendants, American United Cab Association and Irv Friedman, from an order denying relief prayed for in a section 72 petition. (Ill Rev Stats c 110, § 72 (1963)).

On October 11, 1963 plaintiff, Otis Spencer, filed a complaint against defendants and one Joseph Matenko alleging injuries through the negligence of Matenko while operating a motor vehicle of and for American United and Friedman on October 15, 1961. Summons was served upon defendants, American United and Friedman, returnable November 15, 1963 and on December 16, 1963 plaintiff took a default against

them for failure to appear and defend. On that day the court entered judgment against these defendants in the sum of $5,000.

On January 24, 1964 plaintiff filed garnishment proceedings against defendants' bank account. Defendants received notice thereof on January 27, 1964. They then filed their section 72 petition on January 31, 1964 in which they recited the above facts and stated that they had no notice of the entry of judgment against them prior to the notice of the garnishment proceedings. They further alleged that immediately upon receipt of the summons and complaint they forwarded same to the Department of Insurance of the State of Illinois because their insurer, Central Casualty Company, was being liquidated by that Department and it was in possession of all the records and files of that company, and was handling all of its assets and claims. They claimed having no knowledge or record of the accident, and they forwarded the papers to the Department to determine whether Central Casualty had any record or knowledge thereof. Defendants assumed that this Department, since it was in charge of the liquidation, would investigate the matter and protect defendants' interest. They had no information of any subsequent action taken in the case. Immediately upon being advised of the judgment entered herein, defendants stated they contacted counsel, requested representation and were diligent in their efforts to protect their interest, "the interest of the State," of the defunct insurance company and that of plaintiff, if any, as "it may exist in his behalf." Defendants prayed for an order vacating the judgment and allowing them to appear and defend.

Plaintiff, in his answer, questioned the fact of the forwarding of the documents to the Department, denied defendants had no record of the occurrence and

charged they knew long prior thereto that the Director of Insurance could not and would not afford any legal representation to defendants and had advised them that in the event of litigation of this or any cause defendants would be required to assume the risk and would have to obtain their own representation. Plaintiff further charged defendants with culpable negligence in failing to protect their interest from the time they received the summons until the date of the entry of judgment; that said petition failed to assert any defense to the merits and that the rules required notice to the plaintiff personally and not through his counsel which rules defendants failed to follow.

A hearing was held February 20, 1964. Defendants presented the affidavit of Joseph Matenko wherein he stated that no summons was served upon him; that he drove the car owned by Friedman and affiliated with American United Cab Association; that while proceeding easterly on Northwest Expressway at or near the overpass on Central Avenue he "was struck in the rear by a 1961 Pontiac 2-door sedan and pushed into the side" of the vehicle driven by plaintiff; that the driver of the Pontiac then "weaved over and hit a second vehicle" and continued driving in a southeasterly direction, leaving the scene of the accident; that the police appeared and the information was related to them by the affiant and plaintiff. The affidavit alleged that plaintiff stated to the affiant and to the police that he was not injured and that the accident was "caused solely by the negligence of the driver of the 1961 Pontiac 2-door sedan."

A Mr. Ackerman then stated to the court that he was from the office of Richard Hershey, Director of Insurance, Bureau of Liquidation, and was appearing in response to a subpoena. He stated that after a diligent search they found no record of the accident having been reported to the Central Casualty Company; that

the only claims the Bureau of Liquidation can process under the particular circuit court order dissolving Central Casualty are claims where "filings" had been made with the court and became a matter of record as of August 1, 1962; and that the Department then proceeds to arrive at settlements with third party claimants "in such cases where they have made the proper filing to the Bureau of Liquidation. If any record had been made we would have a record, if it was reported to the company."

Jack Taylor testified he was the president of American United. When he received the summons in October 1963 he searched his records and found no report of the accident complained of here. He then forwarded the summons and complaint by regular mail to the Bureau of Liquidation at 188 W. Randolph Street. He knew the Department of Insurance had all the records pertaining to "these" accidents and he thought they had "some indication" that an accident occurred. When forwarding the complaint to them he requested that he be advised if they had "anything" on file. He stated that the Bureau of Liquidation of the Department did effect settlements in behalf of American United in several cases while handling the liquidation of Central Casualty Company.

When defendants offered to introduce testimony by a police officer to show "we have a meritorious defense," the court said: "I don't care about that. I find right now you have a good defense. . . . The big thing here is the diligence question."

The court, thereafter, denied defendants' petition and this appeal followed.

 Initially, plaintiff contends that the trial court lacked jurisdiction of his person and therefore could not consider the petition under section 72 because defendants served notice thereof upon his counsel and not on him personally. Jurisdiction of the person

169

may be waived. Where a party enters a special appearance questioning the jurisdiction of the court over his person and thereafter makes a general appearance, jurisdictional questions raised in the special appearance are deemed waived. O'Flaherty v. Osborn, 26 Ill App 2d 152, 167 NE2d 563 (1960). Any action taken by the litigant which recognized the case as in court will amount to a general appearance unless such action was for the sole purpose of objection to the jurisdiction. Lord v. Hubert, 12 Ill2d 83, 145 NE2d 77 (1957); Widicus v. Southwestern Elec. Cooperative, Inc., 26 Ill App 2d 102, 167 NE2d 799 (1960). Where an attempt is made to attack jurisdiction of court over the person, motion must be made by the party appearing specially for that purpose. Forsberg v. Harris, 27 Ill App2d 159, 169 NE2d 388 (1960). The plaintiff appeared by counsel on January 31, 1963 in answer to the notice and subsequently filed his answer to the petition raising issues regarding the same. Only as part of his answer did he raise the question of jurisdiction. Thereafter he participated in the hearing of the case on its merits. He waived the objection to the court's jurisdiction by his participation and conduct and the court could properly pass upon the petition.

It is defendants' contention that the court erred in denying them relief because it was established that (a) they had a meritorious defense; (b) plaintiff would not be prejudiced in allowing a determination of the matter on its merits; (c) they were not negligent from the time of receiving the summons to the time of presenting their petition; and (d) the setting aside of the default judgment would have done substantial justice between the parties.

██ In Elfman v. Evanston Bus Co., 27 Ill2d 609, 613, 190 NE2d 348 (1963), the Supreme Court held:

Since our decision in Ellman v. De Ruiter, 412 Ill 285, subsequently adopted by the legislature

170

(Laws of 1955, p 2270,) it has become certain that a petition filed under section 72, such as we have here, invokes the equitable powers of the court, as justice and fairness require, to the end that one may not enforce a default judgment attended by unfair, unjust or unconscionable circumstances.

The record before us indicates that defendants satisfied the court that they had a meritorious defense. The trial court based its ruling solely on the finding that defendants were not diligent. In Stehman v. Reichhold Chemicals, Inc., 57 Ill App2d 40, 206 NE 2d 299, the court held:

Since it [section 72 petition] is addressed to the equitable powers of the court, the principles of equity apply.

In a proceeding in equity, laches is a bar to the relief sought. In Freymark v. Handke, 415 Ill 360, the court at page 366 defines laches to be: ". . . such a neglect or omission to assert a right, taken in conjunction with lapse of time of more or less duration, and *other circumstances causing prejudice to an adverse party,* as will operate as a bar in a court of equity." (Emphasis Supplied.)

In the instant case plaintiff by asserting that defendant was not diligent in presenting its petition under Section 72 is in effect invoking the defense of laches. ILP, Chancery, § 115, states: "There is no absolute or fixed rule as to what constitutes laches, and its existence usually is determined by the facts and circumstances of each case."

In the case at bar defendants, upon being served, forwarded the summons and complaint to the Liquidator who had charge of the affairs and records of their defunct insurer. They had no reason to know wheth-

171

er the papers reached the Liquidator or were misplaced by him. Default and judgment were entered within thirty two days of the return date and the first notice thereof was received by them through garnishment proceedings filed after thirty days had elapsed from the entry of the judgment. They immediately applied to the court for relief.

██ The power to set aside a default and permit a defendant to have his day in court is based upon substantial principles of right and wrong and is to be exercised for the prevention of injury and furtherance of justice. Busser v. Noble, 8 Ill App2d 268, 131 NE2d 637 (1956). In the language of the opinion in Widicus v. Southwestern Elec. Cooperative, Inc., 26 Ill App2d 102, 167 NE2d 799: "We do not say that a defendant who fails to act by reason of negligence or without any reasonable excuse has a right to insist that he be allowed to defend. We do say that the record here shows that the defendant[s] did not treat the court's command [summons] nor the plaintiff's claim with indifference. Moreover the record shows that the default was unnecessary to secure justice for the plaintiff and was a denial of justice to the defendant[s]. It should, therefore, have been set aside." And we so hold here.

For the reasons given, the order of the trial court denying defendants relief is reversed and the cause remanded with directions to vacate and set aside the judgment and order of default, and to allow these defendants to appear and defend.

Reversed and remanded with directions.

BURMAN, P. J. and MURPHY, J., concur.