PAUL D. SOLOMON, Plaintiff-Appellant, *v.* ARLINGTON PARK/WASHINGTON PARK RACE TRACK CORPORATION, Defendant-Appellee.

First District (2nd Division)    No. 78-1086

Opinion filed October 16, 1979.

Milton M. Blumenthal and Richard Lee Stavins, both of Chicago, for appellant.

James W. Kissel, William P. Richmond, and Eric F. Quandt, all of Chicago (Sidley & Austin, of counsel), for appellee.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County granting defendant's petition under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 72) to vacate a default judgment that had been entered by the trial court. Plaintiff's primary contention on appeal is that defendant's petition was insufficient to warrant section 72 relief because defendant's failure to appear and defend resulted from its own negligence.

On November 23, 1976, plaintiff, Paul D. Solomon, filed a complaint against defendant, Arlington Park/Washington Park Race Track Corporation, charging defendant with false arrest, trespass, and unlawful search and seizure in violation of the United States and Illinois constitutions. Defendant operates a thoroughbred horse racing track known as Arlington Park, located in Arlington Heights, Illinois. Plaintiff was employed as a groom at the track; with his wife and child, plaintiff resided on the grounds of the track in an apartment which he rented from defendant. The complaint alleged that on July 28, 1976, several of defendant's security guards burst into plaintiff's room and proceeded to search it. They discovered a large quantity of prescription drugs, some for which there were prescriptions and some which plaintiff alleged had been dispensed by a doctor without prescriptions, as well as some over-the-counter medicines. Plaintiff alleged that defendant's agents unlawfully seized the medicine, arrested defendant, and caused him to be imprisoned and charged with a felony. Plaintiff alleged that the evidence seized was ultimately suppressed and returned to him and that the charge against him was dismissed. Plaintiff claimed that as a result of defendant's unlawful actions, he was caused to hire an attorney and was so damaged in his personal and professional reputation that he was unable and possibly would continue to be unable to find employment in the horse-racing business, wherefore plaintiff sought damages in excess of $15,000.

On November 30, 1976, defendant was served with summons and a copy of the complaint at its place of business in Arlington Heights. Service was effectuated upon Sheldon N. Robbins, defendant's treasurer and assistant secretary, who serves as agent for the defendant corporation in accepting service of process and receiving all other legal documents addressed to defendant. When defendant failed to file its appearance or answer within 30 days, on January 3, 1977, plaintiff's attorney mailed a notice of motion to defendant at the same address where defendant had been served with process and which defendant gives as its address. The notice stated that on January 10, 1977, plaintiff would appear before Judge Giliberto in the circuit court and "move the Court to default the defendant and to set this cause for prove-up on damages." Plaintiff's attorney stated on oath that he served the notice by mailing it.

On January 10, 1977, on the date and in the courtroom specified in the notice, an order of default was entered by Judge Giliberto. The order provided:

> "Order of Default. On motion of plaintiff: The Court finds that defendant was duly served with Summons and Complaint and was duly served with Notice of Motion. Defendant has failed to appear. It is ordered that the defendant ARLINGTON PARK/ WASHINGTON PARK RACE TRACK CORPORATION is in default and the complaint is confessed against him [sic]. It is further ordered that this cause be and the same is hereby transferred to Judge P.A. Sorrentino, instanter, for prove-up."

Judge Sorrentino then set the cause "for prove-up on January 19, 1977 at 10:00 a.m. without further notice." Notice of the prove-up appeared in the Chicago Daily Law Bulletin on January 18, 1977. On January 19, Judge Sorrentino ordered the cause assigned to Judge Higgins for trial. On the same day, a jury was empaneled and plaintiff offered proof of his damages. The jury returned a verdict in favor of plaintiff in the sum of $50,000. Notice of the entry of judgment on the verdict appeared the next day in the Chicago Daily Law Bulletin.

Plaintiff did not procure execution of the judgment within 30 days, nor had any attempt to do so been made when, on May 11, 1977, defendant filed its petition to vacate the default judgment pursuant to section 72 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 72). In its petition and supporting affidavits, defendant acknowledged that summons had been served on Robbins, defendant's agent for service of process. The procedure Robbins normally follows is to forward suit papers to defendant's accounting department, which prepares a chronological record of all lawsuits involving defendant and which then forwards the papers to defendant's legal counsel. However, in the instant

case, according to defendant, an unintentional deviation from this procedure occurred. Somewhere in transit from Robbins to the accounting department, the summons and complaint were misfiled with documents relating to a wholly different matter. As a result, the lawsuit was not included in the record of cases prepared by defendant's accounting department and therefore the accounting department never had occasion to confirm, in accordance with its normal procedure, that counsel ever received the summons and complaint. An accounting department employee discovered the documents in April of 1977, while reviewing the unrelated documents among which they had been misfiled. After it was determined that the documents had not been forwarded to defendant's counsel, they were so forwarded. A few weeks later, defendant filed its section 72 petition.

Defendant's petition then stated that defendant never received a copy of plaintiff's notice of motion, with which the affidavit of Robbins, defendant's agent for receiving legal documents, was in accord. The petition also stated that notice of the proveup was never given or received, and that "under the circumstances set forth below" the jury's verdict of $50,000 was "grossly excessive." Defendant's petition then set forth facts, accompanied by affidavits, going toward the existence of a defense on the merits. The petition and affidavits essentially alleged that one of defendant's security guards was on patrol when he saw two persons leaving plaintiff's room, at which time he detected the odor of marijuana. He approached the two and saw them pass a container, which, upon inspection, he found to contain marijuana. He contacted his superiors; after placing the person in possession of the container in custody, some of the officers entered plaintiff's room. Plaintiff allegedly admitted that marijuana had been smoked in the room, but he denied that he had anything illegal and he allegedly authorized a search of his room. The officers found various items used in smoking marijuana, as well as a large shopping bag filled with numerous pills and drugs, many of which were marked "prescription only." When plaintiff said that he did not have prescriptions for all the drugs, including some narcotics, defendant's officers arrested him. They then contacted the authorities and plaintiff, with the shopping bag, was transported to the police station and charged with possession of a controlled substance. The petition ended by stating that neither the arrest, the search, nor the seizure was unlawful, violated any of plaintiff's constitutional rights, or gave rise to any cause of action alleged in the complaint.

Although plaintiff did not file an opposing pleading, he did file various memoranda in opposition to defendant's petition, along with supporting affidavits containing testimony given before the Illinois Racing Board as well as averments by plaintiff's attorney as to the facts relating to

service and notice, set out above. However, the chief factual dispute was raised by plaintiff's affidavit to the effect that representatives of defendant contacted him directly on three separate occasions after he filed the instant lawsuit on November 23, 1976. Plaintiff first alleged that in early December of 1976, while he was working as a salesman at an automobile dealer, he was approached by a man ostensibly interested in buying a car. The man then told plaintiff that he was from Arlington Park Race Track and that if plaintiff dropped his lawsuit, he could come back to the race track to work, but if he did not, he would not be able to work on any track anywhere. Plaintiff said he would think it over and discuss it with his wife.

Plaintiff next averred that a few weeks after the ex parte trial and judgment in his favor, another man apparently interested in purchasing a car revealed himself as a representative of defendant. The man told him that if plaintiff would sign some papers to drop the judgment, defendant would get him a trainer's license. Plaintiff again said he would discuss it with his wife. Plaintiff's affidavit then stated that sometime near the end of June 1977, someone from defendant contacted him and asked what he had decided to do about the offer, and plaintiff said that he was going to persist in court. Plaintiff's affidavit also stated that the drug charge against him was stricken for no probable cause and on motion of the State's Attorney.

In response, defendant filed another affidavit by its agent, Robbins, averring that he made inquiries of appropriate personnel and that to his knowledge, no employee or agent on behalf of defendant contacted plaintiff regarding his action, nor was any employee or agent authorized to do so. Robbins stated that until the misfiling of the summons and complaint was discovered, no one other than himself, upon whom service was made, had or could have had any knowledge of the lawsuit or the subsequent hearing assessing damages. The trial court entered an order granting defendant's petition to vacate plaintiff's judgment and giving defendant leave to plead to the complaint, from which order plaintiff appeals.

■■ Although plaintiff filed no pleading in response to defendant's petition, plaintiff did file affidavits and memoranda of law in opposition, and defendant has never argued that plaintiff waived his opportunity to challenge the petition. Defendant does point out that, as we have noted, the chief factual dispute raised by the affidavits related to defendant's alleged extrajudicial contacts with plaintiff, a question which the trial court must have resolved in defendant's favor. In any event, this matter aside, and the absence of a responsive pleading notwithstanding, defendant's section 72 petition remains open to attack on the ground that it fails to state a claim upon which relief can be granted and is therefore insufficient as a matter of law. *Norvell v. Howard* (1979), 72 Ill. App. 3d

698, 391 N.E.2d 101; *M.L.C. Corp. v. Pallas* (1978), 59 Ill. App. 3d 504, 375 N.E.2d 560.

Plaintiff's challenge is precisely upon this basis. Citing the well-known rule that section 72 " 'is not intended to relieve a party of the consequences of his own mistake or negligence' " (*Esczuk v. Chicago Transit Authority* (1968), 39 Ill. 2d 464, 467, 236 N.E.2d 719, quoting *Brockmeyer v. Duncan* (1960), 18 Ill. 2d 502, 505, 165 N.E.2d 294), plaintiff contends that defendant's petition was insufficient as a matter of law because on its face it amounts to an admission of negligence on the part of defendant. In addition to the cases cited above, plaintiff relies on various cases in which petitions were held inadequate to justify section 72 relief. (See *Diacou v. Palos State Bank* (1976), 65 Ill. 2d 304, 357 N.E.2d 518; *Summit Electric Co. v. Mayrent* (1977), 54 Ill. App. 3d 173, 369 N.E.2d 319; *King v. Equity Mortgage Corp.* (1977), 52 Ill. App. 3d 141, 367 N.E.2d 268; *Lammert v. Lammert Industries, Inc.* (1977), 46 Ill. App. 3d 667, 360 N.E.2d 1355; *Hogan & Farwell, Inc. v. Meitz* (1976), 45 Ill. App. 3d 216, 359 N.E.2d 740; *Bartolini v. Popovitz* (1969), 108 Ill. App. 2d 89, 246 N.E.2d 834.) Of these, the closest case is *King v. Equity Mortgage Corp.*, in which the petitioner claimed that its failure to appear in response to two notices was due to "a change of personnel and clerical error * * *." In reversing an order granting the section 72 petition, the court stated that the petitioner's recital appeared to be an admission of negligence, rather than a matter of excusable error, and the court held that the petitioner had failed to meet its burden of alleging facts justifying relief. 52 Ill. App. 3d 141, 142; see also *Swindle v. Hearst* (1976), 44 Ill. App. 3d 605, 358 N.E.2d 1258 (affirming a denial of a motion to vacate under section 50(5) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 50(5)) over a defendant's claim that she inadvertently misplaced the summons and complaint); *cf. Western Chain Co. v. American Mutual Liability Insurance Co.* (N.D. Ill. 1974), 386 F. Supp. 440, 441, *aff'd* (7th Cir. 1975), 527 F.2d 986 (holding that an insured's failure to forward summons to its insurer, due to the fact that a distraught employee misplaced it, was negligence, such that the insurer was under no duty to defend the insured in seeking to vacate a subsequent default judgment).

Plaintiff also cites cases holding that a petitioner's failure to appear was not rendered excusable by virtue of his reliance on his insurer or broker, to whom he had forwarded summons, to appear for him. This result obtained whether the insurer received the summons and did nothing (*Chmielewski v. Marich* (1954), 2 Ill. 2d 568, 119 N.E.2d 247), or whether the summons was apparently lost in transit. (*Harder v. Advance Transportation Co.* (1960), 26 Ill. App. 2d 439, 168 N.E.2d 777; *Wagner v. Sulka* (1948), 336 Ill. App. 101, 82 N.E.2d 922.) The courts in these cases emphasize that the petitioner should have followed up and inquired

whether summons had in fact reached the insurer and whether a defense was being made. (*E.g., Harder*; see also *Hunt v. General Improvements, Inc.* (1977), 48 Ill. App. 3d 421, 362 N.E.2d 1143; *Burkitt v. Downey* (1968), 102 Ill. App. 2d 373, 242 N.E.2d 901.) To the same effect, in the context of a petitioner's failure to appear because of his reliance on his attorney, are *Norvell v. Howard* (1979), 72 Ill. App. 3d 698, 391 N.E.2d 101, and *Campbell v. Kaczmarek* (1976), 39 Ill. App. 3d 465, 350 N.E.2d 97 (directing, however, that the petition be granted on the issue of damages in order to avoid a double recovery).

Defendant essentially responds by arguing that its failure to appear resulted from an excusable mistake, rather than negligence, and therefore the trial court properly granted defendant's section 72 petition. (See, *e.g., Chase v. Cummingham* (1978), 64 Ill. App. 3d 54, 56, 381 N.E.2d 27.) Defendant cites and relies chiefly on *Goebel v. Benefit Trust Life Insurance Co.* (1967), 88 Ill. App. 2d 19, 232 N.E.2d 211, and *Boyle v. Veterans Hauling Line* (1961), 29 Ill. App. 2d 235, 172 N.E.2d 512. In *Goebel*, the summons and complaint were misfiled in the offices of the defendant's attorney, resulting in the automatic entry of a default judgment eight days before the defendant appeared. In reversing a denial of the petition, the court stated that "[t]he lateness of the answer in this case was due to a misfiling, a clerical error, an excusable mistake, not a lack of diligence on the part of defendant or its attorney." (88 Ill. App. 2d 19, 27.) Other, more recent cases holding that section 72 petitions should have been granted despite the fact that default or dismissal occurred due to inadvertence or mistake on the part of the petitioner's attorney or his agents include *Reich v. Breed* (1979), 70 Ill. App. 3d 838, 388 N.E.2d 994, and *Diner's Club, Inc. v. Gronwald* (1976), 43 Ill. App. 3d 164, 356 N.E.2d 1261, although both these cases also involved motions under section 50(5) that were initially granted but were set aside.

In *Boyle v. Veterans Hauling Line*, the court held that the principles established in several cases arising under what is now section 50(5) should be applicable in section 72 proceedings as well. (29 Ill. App. 2d 235, 246-47; compare *Limar-Pinehurst, Inc. v. Welter* (1976), 38 Ill. App. 3d 800, 803, 350 N.E.2d 252.) Cases cited by the *Boyle* court which held that default judgments should have been vacated include *Busser v. Noble* (1956), 8 Ill. App. 2d 268, 131 N.E.2d 637, in which the defendant's failure to appear resulted from his reliance on his insurer, and *Widicus v. Southwestern Electric Coop.* (1960), 26 Ill. App. 2d 102, 167 N.E.2d 799, in which the defendant's failure to appear was due to an error in diarying the return date made in the office of the attorneys representing the defendant's insurer. Both courts emphasized that the defendants "did not treat [the case] with indifference." *Busser*, 8 Ill. App. 2d 268, 283; *Widicus*, 26 Ill. App. 2d 102, 110; see also *Spencer v. American United Cab*

*Association* (1965), 59 Ill. App. 2d 165, 208 N.E.2d 118 (another section 72 case adopting the rationale of *Busser* and *Widicus*); *cf. Fitschen v. Bellm Freight Lines, Inc.* (1971), 131 Ill. App. 2d 757, 266 N.E.2d 740 (failure to act on summons served at nearly the same time as an almost identical summons in another case held an excusable mistake, the court emphasizing that the defendant acted on the first summons and did not show indifference).

Defendant also cites *Becker v. Pescaglia* (1974), 24 Ill. App. 3d 410, 320 N.E.2d 615, another case involving a section 50(5) motion, in which a default resulted from the inadvertent failure to calendar a return day by a secretary in the office of defendant's attorney. Finding that "[u]sual procedural matters of office administration failed," the court held the defendant's failure to answer was an excusable mistake. (24 Ill. App. 3d 410, 410-11.) A closer and more recent case, one arising under section 72 as well as combining both themes which defendant has extracted from *Becker, Busser,* and *Widicus* (that ususal office procedures broke down and defendant did not treat the summons with indifference) is *Bird v. Kostbade* (1977), 52 Ill. App. 3d 741, 367 N.E.2d 1058. In *Bird,* the defendant, chief executive officer of several related corporations, was personally sued and served with process. His customary mode of handling legal documents was to route them to the controller of his corporations, who would then refer them to legal counsel. However, in this particular instance, for reasons unknown, the documents did not follow their usual route and for that reason no appearance was ever filed. Unlike the instant case, it was undisputed that the plaintiff in *Bird* never made any attempt to notify defendant of the default judgment until the plaintiff began to execute on the judgment four months later.

Citing *Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 190 N.E.2d 348, the Third District Appellate Court stated that the primary inquiry on a section 72 petition is "whether a party has willfully disregarded the process of the court or is so indifferent to it that he is chargeable with culpable negligence." (52 Ill. App. 3d 741, 743.) After finding that "the defendant did have a regular procedure for handling legal documents * * * [which] was shown to be reasonable and did not indicate any intention to disregard the process of the court," the court stated: "That the procedure broke down does not necessarily indicate indifference to or disregard of the court's process," whereupon the court held that the default judgment should have been vacated in its entirety. 52 Ill. App. 3d 741, 744.

This, then, is the context within which we have been presented the following question: is the fact that the summons in the case at bar was misplaced in defendant's office an excusable mistake, or does it constitute negligence as a matter of law? Although some support for each

position may be found in the appellate court cases cited above, and though there are some factual distinctions that could be drawn, we believe that little would be gained by attempting to harmonize or distinguish among them all, if indeed that were possible. Rather, we consider it preferable to review briefly the nature of the showing our supreme court has required of petitioners under section 72, as stated in *Esczuk v. Chicago Transit Authority* (1968), 39 Ill. 2d 464, 467, 236 N.E.2d 719:

> "Section 72 of the Civil Practice Act substitutes a simple remedy by petition for various forms of post-trial relief and enables a party to bring before the court rendering a judgment matters of fact which, if known to the court at the time judgment was entered, would have prevented its rendition. (*Brockmeyer v. Duncan*, 18 Ill. 2d 502; *Glenn v. People*, 9 Ill. 2d 335.) However, a party may not avail himself of the remedy provided by section 72 'unless he shows that through no fault or negligence of his own, the error of fact or the existence of a valid defense was not made to appear to the trial court. [Citations.] Such a motion or petition is not intended to relieve a party from the consequences of his own mistake or negligence.' (*Brockmeyer v. Duncan*, 18 Ill. 2d 502, 505.) The burden is upon the petitioner under section 72 to allege and prove the facts justifying relief."

Has defendant borne its burden of showing that its failure to appear was "through no fault or negligence of [its] own," and not the result of its "own mistake or negligence"? We think that it has plainly not so shown. Quite simply, we agree with the finding of the court in *Western Chain Co. v. American Mutual Liability Insurance Co.* (N.D. Ill. 1974), 386 F. Supp. 440, 441-42, *aff'd* (7th Cir. 1975), 527 F.2d 986, albeit in a slightly different context, that it is negligence for the registered agent and officer of a large, sophisticated corporation to misplace the summons in a lawsuit. This is particularly true where, as here, the agent never made any further inquiry to see that action was being taken in response to the summons, even though the receipt of legal documents apparently constitutes a large part of his responsibility.

Defendant argues that it did not treat the summons with indifference or willfully disregard it; rather, it had a procedure for dealing with summonses, but in this instance the procedure simply failed. We recognize that the court in *Bird v. Kostbade* (1977), 52 Ill. App. 3d 741, 367 N.E.2d 1058, accepted this argument on similar facts. However, we must reject it for two reasons. First, we presume that every business of any size has some procedure for receiving, recording, and forwarding legal documents, which procedure could probably be characterized as "reasonable" as the procedures in *Bird* and in the case at bar. To hold that

the existence of such a procedure automatically rendered lapses therein excusable would be, in our view, to set a precedent both illogical and detrimental to the administration of justice.

■ Second, we note that to our knowledge, our supreme court has never, in *Elfman* or in any other case, endorsed the doctrine that section 72 may be invoked under similar circumstances unless willful disregard of or indifference to the court's process is shown. On the contrary, as the above quotation from *Esczuk* makes clear, if the petitioner's failure to appear resulted from his own negligence, he may not avail himself of the remedy provided by section 72. Thus, in *Brockmeyer v. Duncan* (1960), 18 Ill. 2d 502, 504, 165 N.E.2d 294, in affirming the denial of a petition to vacate, the court stated: "No facts are alleged to show petitioners were free of negligence in failing to appear * * * ." In *Esczuk*, the petitioner claimed that her failure to appear was due to " 'mere inadvertency or * * * neglect' " (*Esczuk*, 39 Ill. 2d 464, 467); the court held that the facts alleged failed to justify relief, as "the dismissal resulted from the inadvertent failure of [petitioner] to follow her case." (39 Ill. 2d 464, 469.) Finally, in *Diacou v. Palos State Bank* (1976), 65 Ill. 2d 304, 357 N.E.2d 518, the petition alleged a " 'procedural misunderstanding or mistake' " on the part of the petitioners, as well as the incapacity of their attorney during part of the period in question. Yet the court found that the petitioners had failed to demonstrate any basis for an award of section 72 relief and that the trial court abused its discretion in granting their petition. (*Diacou*, 65 Ill. 2d 304, 311.) Despite the length of defendant's petition in the case at bar, it ultimately alleges no more in this regard than the fact that someone in defendant's office misplaced the summons and complaint; and under the cases cited, this is insufficient to warrant section 72 relief.

■ Defendant argues that even if the default judgment did not result from an excusable mistake, the trial court properly exercised its equitable powers in granting defendant's petition. However, having held that defendant failed to defend due to its own negligence, and noting the absence of any suggestion of fraud or unconscionable behavior on the part of plaintiff or the court (see *Esczuk*, 39 Ill. 2d 464, 469), we find nothing to invoke the equitable powers of the court. While defendant points to plaintiff's failure to execute on his judgment within 30 days as a factor to be considered, with which, of course, we are in accord (see, *e.g.*, *Resto v. Walker* (1978), 66 Ill. App. 3d 733, 741-42, 383 N.E.2d 1361), this factor alone cannot constitute a basis for section 72 relief. *Limar-Pinehurst, Inc. v. Welter* (1976), 38 Ill. App. 3d 800, 804, 350 N.E.2d 252.

■■ Finally, defendant argues that section 72 relief was properly granted at least as to damages, as defendant never received notice of the prove-up. (See *Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 614-15, 190

N.E.2d 348; *Whitworth v. Morgan* (1977), 46 Ill. App. 3d 292, 360 N.E.2d 1198; *Hall v. McMillian* (1972), 8 Ill. App. 3d 448, 289 N.E.2d 669.) While these cases do provide that a defendant is entitled to notice of the prove-up in an action, such as this, for an unliquidated amount of damages, defendant ignores the fact that plaintiff did give notice of his intent to move for a default "and to set this case for prove-up on damages." Unlike the situations in the cases cited by defendant, in the instant case there was an unbroken chain of continuances from the date set in the notice to the proveup, such that notice of the proveup was effectively given; we find no merit in defendant's claim that notice of the proveup can only be given after the defendant has already been defaulted. As to defendant's claim that it never received the notice, our courts have frequently held that such an allegation is not inconsistent with a finding that notice was given and cannot alone justify section 72 relief. (See, *e.g., Diacou*, 65 Ill. 2d 304, 311; *Esczuk*, 39 Ill. 2d 464, 468-69.) Moreover, we note that this is not a case in which a defaulted defendant is arguing that the damages awarded exceeded the amount that could properly be awarded (compare *Campbell v. Kaczmarek* (1976), 39 Ill. App. 3d 465, 350 N.E.2d 97) or were otherwise unfairly inflated. Compare *Elfman*.

In the absence of any showing of fraud, unconscionable behavior, or unfair advantage on the part of plaintiff or the court, and in view of the fact that defendant's failure to appear resulted from the negligence of its own agent, we are compelled to find that the trial court abused its discretion in granting defendant's petition. Accordingly, the order vacating the judgment against defendant is reversed and the cause is remanded with directions to reinstate the judgment.

Reversed and remanded with directions.

DOWNING and HARTMAN, JJ., concur.