Edith Widicus, Plaintiff-Appellee, v. Southwestern Electric Cooperative, Inc., an Illinois Not-For-Profit Corporation, Defendant-Appellant.

Gen. No. 60–F–4.

Fourth District.

May 27, 1960.

Rehearing denied June 28, 1960.

James L. Reed, of Edwardsville (Kenneth F. Kelly, of counsel) for appellant.

Donald C. Rikli, of Highland, and Cox, Smith, and Bassett, of Wood River, for appellee.

HOFFMAN, JUSTICE.

This appeal arises from a verdict entered in a personal injury action wherein plaintiff sued for injuries alleged to have been sustained by her when her car collided with a broken utility pole belonging to defendant.

The undisputed facts are these. On November 16, 1955, one of the defendant's poles was blown over by a high wind and was down across a public highway. Shortly after the pole had fallen, plaintiff, while driving her automobile, ran into it. In February of 1956, plaintiff retained Attorney Donald C. Rikli to represent her. He opened settlement negotiations with defendant's insurance carrier. These negotiations continued intermittently until November 5, 1957, when plaintiff brought this suit.

Summons was served on November 5 personally upon an individual, who, on that date, was the registered agent of the defendant. On November 14, 1957, the attorneys for the parties conferred by telephone regarding settlement and a medical examination of plaintiff. On November 29 or 30, 1957, both attorneys agreed that defendant would have until January 6, 1958, to plead or answer, but no order was entered. No pleading or answer was filed by defendant, and on January 9, 1958, plaintiff secured a default order. This order was followed on January 17th, 1958, by a

104

default judgment in plaintiff's favor in the sum of $35,000. On February 4, 1958, defendant moved to vacate the default order and judgment. This motion was not heard until September 10, 1958, when the court overruled defendant's motion to vacate the default order of January 9 but did set aside the judgment entered January 17. Defendant was allowed a hearing on damages only before a jury convened on December 3, 1958; and, on December 8, 1958, the jury returned a verdict in favor of plaintiff in the sum of $16,500. Upon a denial of defendant's post-trial motion on May 20, 1959, this appeal was perfected by defendant. So much for the undisputed facts.

Both parties, by affidavits on file, dispute what occurred between their representatives in late December, 1957, and early January, 1958.

Defendant's claims are these: That one of his attorneys obtained a copy of the medical report of plaintiff's physical examination and sent this to an investigator with instructions to discuss settlement with plaintiff's attorneys on the basis of this medical report; that this investigator on January 7, 1958, talked with plaintiff's attorney Rikli regarding a meeting, but Rikli said such a conference would be impossible because of the press of other business, that he could not see him until sometime after January 15, and that he suggested that the investigator see another of plaintiff's attorneys, a Mr. Wm. C. Cox, Jr.; that on January 13, the investigator went to see Attorney Cox but was told that he was out of town until January 15; that on January 15, the investigator returned to Cox's office but was unable to see him; that on January 20, the investigator went to Cox's office again and was told by Cox that the default judgment had been entered on January 17; and that this was the first that either the investigator or defendant's attorney knew of the entry of any defaults.

Attorney Rikli, in this affidavit, states that after suit was filed and prior to December 6, 1957, he cooperated with defendant's investigator relative to obtaining medical reports, but that from December 6 until after the default was obtained no one representing defendant or its insurer discussed the cause with him. Attorney Cox, by affidavit, states that he had three conversations with defendant's investigator, two of which were prior to December 6 and the other occurred on January 20, and that at the conference on January 20 he did not immediately tell the investigator of the default judgment they had obtained but tried to elicit defendant's position before revealing this circumstance.

The defendant explains its failure to plead or answer by January 6, 1958, in the following manner: The attorneys who represent defendant's insurer keep a diary of pending cases in their office, which diary is under the personal charge of one of them. This diary showed that the initial pleading in this case was due on December 5, 1957. When a diaried matter is taken care of, the attorney in charge makes a red mark opposite the entry. The diary was brought into court, and it showed that the page for December 3, 1957, was narrower than that for December 5, 1957, due to a manufacturing defect and that a red mark placed after an entry on December 3 had carried over onto the December 5 page, opposite the entry for this case. Thus, when the attorney examined the diary on December 5, he assumed that the action necessary in this case had been taken and did nothing. For this reason, the stipulated extension date of January 6, 1958, was not entered in the diary, and that date was allowed to pass without a pleading being filed.

The defendant's main reliance upon appeal is that the trial court abused its discretion in refusing to vacate plaintiff's order of default entered January 9,

106

1958. In addition, the defendant argues that it was improperly served with summons, that there were errors in the admission of evidence, that several instructions were faulty and that the verdict was excessive.

To support its main position, defendant has filed affidavits relating to the occurrence in question which, in our judgment, disclose a meritorious defense going to the matter of defendant's negligence, plaintiff's contributory negligence and the proximate cause of the occurrence.

Plaintiff contends that the trial court did not abuse its discretion, but rather, was "generous to the defendant," and "granted them more relief than they were deserving of"; that defendant's failure to plead was the fault of its own employees; and that defendant was guilty of "laches and unconscionable delay."

Our consideration of the propriety of an order denying a motion to set aside a default must be grounded upon the applicable statute (Chap. 110, sec. 50 (6), Ill. Rev. Stat.), and certain general rules which have been recognized. The statute provides that, "The court . . . may on motion filed within 30 days after entry thereof set aside any final order, judgment or decree upon any terms and conditions that shall be reasonable." Our courts have held that the allowance of such a motion rests upon the proper exercise of sound discretion based upon the facts in the case, and that a reviewing authority will only interfere if this discretion has been abused. History will reveal that the courts of Illinois have been liberal in setting aside defaults entered at the same term, and that where there has been no trial on the merits, the courts' discretion is usually exercised in favor of granting the motion. Moreover, our legislature has directed that our Practice Act be liberally construed so that controversies may be speedily and finally determined according

107

to the substantive rights of the parties. Chap. 110, sec. 4, Ill. Rev. Stat.

Many of the cases which have been cited to us have stated that the motion to set aside a default must show a meritorious defense and a reasonable excuse for not having made that defense in due time. See Busser v. Noble, 8 Ill.App.2d 268, 274, 131 N.E.2d 637; Dalton v. Alexander, 10 Ill.App.2d 273, 282, 135 N.E. 2d 101. The statute, prior to the 1933 amendment, prescribed that a default might be set aside "upon good and sufficient cause, upon affidavit. . . ." Sec. 58, Practice Act of 1907. Since the amendment, this quoted part has been deleted and now a default may be set aside "upon any terms and conditions that shall be reasonable."

■■■ In view of the fact that the statute, as it now stands, does not contain the requirement that good and sufficient cause appear, we do not believe that a court now must categorically determine that a meritorious defense or a reasonable excuse be proven to justify setting aside a default. We believe that the discretion will be properly invoked if it is based upon principles of right and wrong and is exercised for the prevention of injury and the furtherance of justice. 31 Am. Jur., Judgments, sec. 734, p. 279. The spirit of the Practice Act is that controversies be speedily determined according to the substantive rights of the parties. This means an undelayed hearing on the merits with both sides present in the courtroom. The allowance of countless delays is a denial of substantial justice to the plaintiff. The hurried entry of a default is a denial of substantial justice to the defendant. Both are abuses which should not be condoned.

■■■ The question of whether or not a court should set aside a default should be so resolved as to do substantial justice between the parties and with the idea in mind of carrying out, insofar as it is pos-

108

sible, the determination of matters upon their merits. In resolving this problem, a court may well consider whether or not a defendant has a meritorious defense, and whether or not defendant's delay in responding to the court's command actually jeopardizes plaintiff's basic position. But this should not be the only, nor necessarily, the determining factors. It seems to us that the overriding reason should be whether or not justice is being done. Justice will not be done if hurried defaults are allowed any more than if continuing delays are permitted. But justice might, at times, require a default or a delay. What is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome.

The entering of a default is one of the most drastic actions a court may take to punish for disobedience to its commands. The court has other powers which are ample in most instances. In our judgment, a default should only be condoned when, as a last resort, it is necessary to give the plaintiff his just demand. It should be set aside when it will not cause a hardship upon the plaintiff to go to trial on the merits.

It is in this light that we view this case and that we judge the propriety of the trial court's refusal to set aside the default order of January 9, 1958. Here, both sides had negotiated toward a settlement for a long period of time prior to the filing of the complaint. Immediately thereafter, they were in touch with each other and conferred regarding plaintiff's injuries and defendant's pleadings. Through inadvertence or negligence, the defendant failed to file a pleading within the agreed time and plaintiff took immediate advantage of this, without any notice to defendant, and without a break-off in negotiations on the merits. Defendant quickly filed his motion to set aside the default. It was not heard until September 10, 1958, and

plaintiff did not secure her judgment until December, 1958. Had the motion been acted upon swiftly, and allowed, it is likely that a hearing on the merits could have been obtained just as quickly as the hearing on damages alone. Nothing is indicated in the record, other than punishment alone, for refusing to set aside the default order. Judgment for the plaintiff was not advanced. Only detriment to the defendant was accomplished.

■ We do not say that a defendant who fails to act by reason of negligence or without any reasonable excuse has a right to insist that he be allowed to defend. We do say that the record here shows that the defendant did not treat the court's command nor plaintiff's claim with indifference. Moreover, the record shows that the default order was unnecessary to secure justice for the plaintiff and was a denial of justice to the defendant. It should, therefore, have been set aside.

The defendant also urges strongly that there was a defective service of summons as shown by the return of the sheriff. In the trial court, defendant, after being defaulted, entered a special appearance to challenge the court's jurisdiction and joined with it, in the alternative, a motion to set aside the default order and default judgment. Thereafter, the trial court set aside the default judgment but proceeded to a trial on damages. Defendant participated in these proceedings.

■ Defendant's conduct waived any irregularity in the service of summons. Any action taken by a litigant which recognizes the case as being in court will amount to a general appearance unless such action was solely to object to the jurisdiction. Such action, which may amount to a general appearance or a waiver of error in ruling on the special appearance, can take many forms. See Section 20 of the Civil Practice Act, Illinois Revised Statutes, chap. 110, sec. 20(3).

110

See also Lord v. Hubert, 12 Ill.2d 83, 145 N.E.2d 77; Book v. Ewbank, 311 Ill. App. 312, 35 N.E.2d 961, 965.

█ Since this case must be retried on its merits, and the court will be called upon to pass upon instructions, we will comment on the defendant's objection to plaintiff's instruction No. 4. This instruction related to aggravation of pre-existing ailments as an element of damages. Under the facts and circumstances of this case, the plaintiff was entitled to have the jury instructed that it could consider aggravation of pre-existing conditions as an item of damages. We think, however, the better practice would be to include this element of damage in the general instruction which informs the jury of all the various elements it may consider in arriving at the amount of its verdict.

The judgment of the Circuit Court of Madison County is reversed and the cause remanded with directions to vacate the default order of January 9, 1958, and permit the defendant to answer.

Reversed and remanded with directions.

SCHEINEMAN, P. J. and CULBERTSON, J., concur.