Sentry Royalty Company, a Corporation, Plaintiff-Appellee, v. Jean Craft and Gladys Rednour, Defendants-Appellants.

Gen. No. 66–64.

Fifth District.

February 16, 1967.

Modified opinion March 22, 1967.

Burton C. Bernard, of Granite City, and T. Hartley Pollock, of St. Louis, Missouri, for appellants.

Dreman and Sterling, of Belleville, for appellee.

EBERSPACHER, J.

Plaintiff Sentry Royalty Company filed its complaint praying that defendants Jean Craft and Gladys Rednour be directed to execute and deliver to plaintiff their warranty deed conveying their interest in all coal underlying a tract of land in Randolph County, upon payment to defendants of the balance of the purchase price found to be due them, deducting all reasonable costs to which plaintiff "had been put"; and that upon the failure of defendants to do so, that the Sheriff be directed to execute and deliver a deed on their behalf.

The complaint was based on allegations to the effect that Dwight Rainey, the father of defendants, had on January 29, 1955, executed an option to one Andrew Brown, for a consideration of $80, renewable for a period of 9 years by payment of a like sum annually at the option of grantee, either to the grantor or by deposit of such funds in the First National Bank of Sparta, whereby Rainey, the grantor, agreed to convey the coal underlying the tract for a consideration of $50 per acre, and to convey the fee title to not to exceed 3 acres, at the further option of the grantee, for a consideration of $500 per acre. The alleged option provided that it should be binding upon the heirs, administrators, assigns and successors of the respective parties, and was recorded on January 7, 1957, with an assignment thereof to Northern Illinois Coal Corporation, which corporation was subsequently merged into plaintiff. The complaint further alleged that Dwight Rainey died intestate subsequent to the execution of the option, leaving surviving as his sole heirs, these defendants and their sister Florence Salger, and that the payment to renew the option for the year 1956 had been made to Herbert Salger, the administrator of Dwight Rainey's estate, which was administered in Randolph County; that the payment to renew for the

year 1957 was made to the bank at Sparta, and that subsequent annual payments of $80 through 1964, were made to the three heirs pro rata. There were further allegations to the effect that in 1964 plaintiff gave notice of its election to purchase the coal by delivery of a copy of its notice of election to purchase, to the bank, pursuant to a provision of the option; that Florence Salger and her spouse, upon tender being made, deeded their interest in the coal to plaintiff but that defendants, upon tender of their respective shares of the consideration for the coal each amounting to $1,048.53, had refused to accept the consideration, and refused to execute deeds.

The defendants resided together in Chicago where they were both employed; they were both personally served with summons by the Sheriff of Cook County, one on April 11, 1965, the other a day later. On May 10, within 30 days after service, they sent a telegram to the Clerk of the Circuit Court, referring to the pending case in which they stated, "we refuse to execute and deliver deeds to plaintiff, our attorney will contact soon," which the Clerk filed on that date. On the following day, May 11, defendant Jean Craft telephoned the Clerk's Office and a deputy confirmed receipt of the telegram.

On May 14, 1965, not more than 3 days after the return dates, the trial court entered an order of default in which the court found that defendants had failed to appear or plead, and on May 20th evidence was heard, and a decree entered directing each defendant to execute and deliver a deed of their interest in the coal underlying the tract within 30 days, and directing plaintiff to deliver certified checks to the clerk payable to each defendant in the amount of $731.78, being the unpaid balance of the purchase price after deducting expenses and costs allowed plaintiff, including an allowance of a $600 fee for plaintiff's attorney, and further providing that should defendants refuse to comply with the terms of the decree within 31 days, that the Sheriff of Randolph County

413

execute and deliver a deed to plaintiff, conveying the interest of the noncomplying defendant or defendants in the tract. On May 20th, the clerk mailed a copy of the decree with a warranty deed to each of defendants by certified mail, each of which was returned by the post office department, unclaimed.

Subsequently the Sheriff executed and delivered deeds of defendants' interest in the coal and on July 15, 1965, the clerk so advised them by letter and enclosed the certified checks, which they each received the following day, July 16, and on the same day defendants again called the clerk's office by long distance telephone, and were referred to the judge who had entered the decree. Thereafter, by counsel whom they had been successful in retaining, they caused to be filed a verified motion to vacate the default, set aside the decree, and invalidate the deed executed by the Sheriff.

In that motion, they alleged that sometime after service they had called the clerk of the court, explained that they were inexperienced in litigated matters and that they had been unable, due to their employment in Chicago, to employ counsel in the Randolph County area, and were assured that if they answered by telegram "yes it will be all right and I will take care of it for you"; that they subsequently sent the telegram of May 10, the receipt of which the clerk's office acknowledged the following day, and that if they had been aware that such telegram was inadequate as an appearance, one of them would have personally appeared. Therein, they further alleged their receipt of copies of the decree and the additional call to the clerk, and their referral to the trial judge; that their motion was not filed for the purpose of delay or vexation and that they had believed they would have a day in court to present their defenses; and that they each believed they had a defense, in that they had sought and received an opinion from a questioned docu-

ment examiner in Chicago, to the effect that the signature of Dwight Rainey on the purported option was not the real signature of Dwight Rainey as his signature was represented to the expert in numerous exhibits. Attached and incorporated into their motion, was a letter addressed to defendant Craft, dated February 23, 1965, on the letterhead of International Graphoanalysis Society, bearing the Chicago address and telephone number of the Society, and on which it was explained that graphoanalysis is a scientific system of handwriting analysis. The letter was signed by Phillip H. Vivian, C. G. A., Document Examiner, and stated that the writer had examined cancelled checks drawn by Rainey between July 27, 1953, and November 29, 1954, as well as an envelope bearing the return address of Rainey, postmarked January 17, 1955, as well as a photocopy of the option purportedly bearing the signature of Rainey, and that it was his opinion that the signature on the option did not correspond to the known signatures of Rainey which had been examined, and was made by someone other than Rainey.

The record discloses, no response, by answer, affidavit, or evidence on behalf of plaintiffs to defendants' motion to vacate, but that the motion was argued before another judge, the judge who had entered the default and heard the original cause having disqualified himself, and denied on March 11, 1966.

From this order and the decree entered on May 20, 1965, defendants filed their petition for leave to appeal, explaining by affidavit their difficulty in retaining counsel both in Chicago and locally, counsel's withdrawal, and their difficulty due to their employment and remoteness, in engaging counsel, and their further misunderstanding with reference to the effect of their telegram. Their petition for leave to appeal also included the report of a St. Louis examiner of questioned documents, finding the signature on the option was not executed by the

writer of the "Dwight Rainey" signatures on a number of documents containing his known signature, in addition to those submitted to the Chicago expert. The report pointed out that in the expert's opinion, the purported signature of both the grantor and the notary public on the reverse of the option had been traced over. In opposition to the petition for leave to appeal, plaintiff has in its answer included affidavits of the grantee and notary public, to the effect that they were present when Rainey signed the instrument and the affidavit of the party who was the Recorder of Deeds of Randolph County at the time the instrument was recorded, to the effect that he had traced over the signatures of the grantor and notary public on the instrument with India ink for the purpose of getting a good reproduction by use of the photocopying equipment used for the recording of instruments.

The record discloses that such facts as are alleged in the affidavits included in plaintiff's answer to the petition for leave to appeal were never offered in either the original trial or in opposition to the motion to vacate, and the judge hearing that motion had uncontradicted expert opinion that the signature was not genuine, and the fact that the signatures on the instrument had been traced, as plaintiff now concedes they were, was never presented to the court. It is to be noted that in the original trial of this cause, no witness testified as to the execution of the option by Dwight Rainey, the only evidence offered as to such execution was the testimony of Florence Salger, who in response to the question "whether or not that is the signature of your father," responded "it is." Since we now know that the purported signature, whether genuine or not had been traced at the time it was testified to by Mrs. Salger, we consider her testimony on this point to be of no probative value.

Under such circumstances we granted defendants' petition for leave to appeal, and requested counsel for all

parties in addition to the briefs filed, to furnish briefs on the question of the propriety of the allowance of attorney fees in this case.

In support of the court's denial of the motion to vacate, set aside and invalidate, which was uncontradicted by pleading, affidavit or evidence in the trial court, plaintiff has urged that defendants' telegram of May 10 neither constituted an answer, nor an appropriate motion within the purview of Supreme Court Rule 8(1) and point out that under that section regardless of the manner of appearance, a defendant's answer or appropriate motion should be filed within the 30-day period. The Civil Practice Act (Ill Rev Stats 1965, c 110, § 20(1)) provides that "every appearance, prior to judgment" which is not a special appearance "is a general appearance." It, by its own provisions (section 4), is to be liberally construed "to the end that controversies may be speedily and finally determined according to the substantive rights of the parties."

██ Defendants were entitled to notice in writing that plaintiff would move the trial court for a default,[1] but the record shows no proof of such notice, nor does any party contend such notice was given. Had such notice been given, defendants would have been afforded an opportunity of a hearing to prevent the default order as well as the decree being so promptly entered. Here there is little question that failure to comply with the rule, which had the same effect as a statute, North Ave. Building & Loan Ass'n v. Huber, 286 Ill 375, 121 NE 721, coupled with the fact that apparently no consideration was given to treating the telegram as a request for additional time to plead, led the court into error in defaulting defendants and

---

[1] Uniform Rules of the Circuit Court of Illinois, Rule 2.1, Ill Rev Stats 1965, c 110, § 302.1, adopted by the Twentieth Judicial Circuit January 2, 1964.

promptly hearing the cause in a nonadversary proceeding when in fact the signature of the instrument on which the action was based was concededly open to vital attack.

 The allegations of defendants' timely motion to vacate were not controverted in the trial court, and in view of them, and the absence of any showing that a delay would jeopardize plaintiff's basic position, left little room for discretion of that court. We believe the language used by our predecessors in Widicus v. Southwestern Elec. Cooperative, 26 Ill App2d 102, pp 108–109, 167 NE2d 799, 803, is here applicable. There the court after pointing out that it is no longer necessary that a motion to set aside a default must show a meritorious defense and a reasonable excuse for not having made that defense in due time; but that the discretion to vacate and set aside is properly invoked if it is based upon the principles of right and wrong and is exercised for the prevention of injury and the furtherance of justice, and that the hurried entry of a default is a denial of substantial justice to the defendant. Continuing, the court said:

"The question of whether or not a court should set aside a default should be so resolved as to do substantial justice between the parties and with the idea in mind of carrying out, insofar as it is possible, the determination of matters upon their merits. In resolving this problem, a court may well consider whether or not a defendant has a meritorious defense, and whether or not defendant's delay in responding to the court's command actually jeopardizes plaintiff's basic position. But this should not be the only, nor necessarily, the determining factors. It seems to us that the overriding reason should be whether or not justice is being done. Justice will not be done if hurried defaults are allowed any more than if continuing delays are permitted. But justice might, at times, require a default or a delay.

418

What is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome.

"The entering of a default is one of the most drastic actions a court may take to punish for disobedience to its commands. The court has other powers which are ample in most instances. In our judgment, a default should only be condoned when, as a last resort, it is necessary to give the plaintiff his just demand. It should be set aside when it will not cause a hardship upon the plaintiff to go to trial on the merits."

■ The record here positively shows that these defendants did not treat the command of the summons to answer, nor the plaintiff's claim with indifference. The record shows the default order was unnecessary to secure justice for the plaintiff, was entered without the required notice in violation of the court's rules, and was a denial of justice to defendants. It should therefore have been set aside, and the decree vacated.

Plaintiff here contends that the allowance of $600 for plaintiff's attorney fees in this cause is justified under their complaint in which they prayed for the deduction from the proceeds found due defendants, of "all reasonable costs to which plaintiff has been put in this matter," and the fact that the alleged option on which the complaint was based provided for certain costs to be applied as a part of the purchase price. The option states:

". . . in the event that the Grantee shall subsequently exercise this option it may deduct from the final payment of the purchase price the cost of such abstract and the cost of the correcting defects in title, if any. . . ." (paragraph 3)

"If such examination of title does not show merchantable title of record, the Grantee shall notify

the Grantor of any existing defects, if any, and the Grantor shall forthwith do all things necessary to correct such defects, if any. In case the Grantor does not correct such defects, if any, as above set forth, the Grantee may, at its election, proceed to correct such defects on behalf of the Grantor and the reasonable costs thereof shall be applied upon and as a part of the purchase price hereinstated [sic]." (paragraph 4)

■ ■ We consider that neither a proper interpretation of this language of the option, nor plaintiff's prayer, justify an award of attorney fees in this cause. Plaintiff has sought, and obtained, "new or additional relief" for which Supreme Court Rule 7–1 required advance notice to defendants, and such notice was not given. Furthermore the language of the option does not constitute such an agreement of the parties as would justify the award of attorney fees under the facts and circumstances here present. The rule in Illinois is that attorney fees are not allowable to the successful party in the absence of a statute, or in the absence of some agreement or stipulation specially authorizing the allowance thereof, and this rule applies equally in courts of law and in courts of equity. Ritter v. Ritter, 381 Ill 549, 553, 46 NE2d 41, 43; People ex rel. Horwitz v. Canel, 34 Ill2d 306, 215 NE2d 255.

We have taken for consideration with this case, plaintiff's motion to strike defendant-appellants' reply brief filed on July 14, 1966, more than 15 days after the order granting leave to appeal, in noncompliance with Rule 21 of this Court. Rules of court are adopted to facilitate the work of the court, and while we do not condone noncompliance, we are not presented here with a matter which impaired the rights of any party, nor delayed any of the proceedings in this matter.

As a result, we therefore reverse and vacate the orders, judgments, decrees and deed made pursuant thereto, in this cause in the Circuit Court of Randolph County, and remand this cause with directions that defendants be given leave to plead, and for further proceedings not inconsistent with this opinion.

Reversed and remanded with directions.

MORAN and GOLDENHERSH, JJ., concur.