James Trojan and Shirley Trojan, Individually and as Parents and Next Friends of Debra Trojan and Frances Trojan, Minors, Shirley Trojan, as Administrator of the Estate of Marie Trojan, a Minor, Deceased, and Donald Ambroz, Plaintiffs-Appellees, v. Marquette National Bank, Vincent T. Juzulenas, et al., Defendants-Appellants.

Gen. No. 51,506.

First District, Second Division.

October 27, 1967.

■■■■■■■■■■■■■■■■■

Louis P. Miller, Walter Soroka, and Gregory L. Tumbarello, of Chicago, for appellants.

Robert D. McHugh and Raymond S. Barish, of Chicago, for appellees.

MR. PRESIDING JUSTICE LYONS delivered the opinion of the court.

This appeal emanates from an action originally brought by the plaintiffs, James Trojan, et al., for damages for personal injuries, wrongful death and property damage resulting from a fire in an apartment building located at 4735 South Wolcott Street in the City of Chicago. The fire occurred on May 10, 1959. The premises were occupied by the plaintiffs as tenants, with the sole exception of plaintiff-Ambroz, then a guest. The building was alleged to have been under the ownership and control of the instant defendants, Daniel and Anna Sobol (husband and wife), as beneficial owners pursuant to a land trust agreement with the defendant-Marquette National Bank. Original codefendants, Vincent and Louise Juzulenas, as well as Marquette National Bank, were subsequently dismissed, with prejudice, from the action and are not parties to this appeal (the former for want of service of summons, the latter on motion of plaintiffs).

On November 19, 1965, the court below sitting without a jury, after consideration of ex parte testimony and exhibits offered in plaintiffs' behalf, entered a judgment against defendants Daniel and Anna Sobol, with damages being assessed in the aggregate amount of $105,946. This appeal is taken by said defendants from the entry of the court's subsequent order on April 7, 1966, which order denied defendants' motion and supplemental petition to vacate and set aside its ex parte judgment.

No questions have been raised on the pleadings. At issue however, and of particular relevance to the re-

spective theories advanced by the parties, are certain circumstances attendant to the events preceding the ex parte hearing, the material portions of which are herewith set forth.

Plaintiffs' complaint at law was filed on July 10, 1959, and subsequently amended on November 7, 1961, to join Anna Sobol as an additional party defendant. Anna Sobol has never filed an answer to that complaint, nor does the name of an attorney in her behalf appear of record. Daniel Sobol, by and through his original attorney of record, Edward Fusek, did file an answer to the initial complaint.

After having prepared and filed an answer to the original complaint in Daniel Sobol's behalf, but prior to the filing of the amended complaint, Fusek on May 26, 1961, by leave of court, withdrew as counsel for said defendant. Thereafter on July 7, 1961, in response to certain interrogatories directed to Daniel Sobol, which had been served prior to Fusek's withdrawal, answers to same in defendant's behalf were served and filed, which answers bore the signature:

> "Edward S. Cody
> Attorney for Daniel Sobol,
> Defendant"

Save the affixation of the Cody signature to the aforesaid answers, no formal appearance by any attorney in Daniel Sobol's behalf, other than that of Fusek's, appears in the common-law record relative to the events preceding the default.

On November 5, 1965, upon the motion of plaintiffs, proper notice being served upon defendants personally, the court below entered an order permitting the withdrawal of plaintiffs' earlier jury demand and dismissing the defendant-Marquette National Bank with prejudice. Neither defendant appeared pro se or by counsel in opposition to this motion.

431

On November 16, 1965, the instant case reached the trial call calendar of the court's common-law division assignment judge. Again, neither defendant appeared personally or by counsel. Counsel for plaintiffs was similarly in absentia, his failure to appear being subsequently attributed to his required presence in an unrelated cause in another courtroom to which he had been assigned for trial by the same assignment judge. Absent any parties or counsel, the assignment judge, on his own motion, thereupon entered an order dismissing the cause for want of prosecution. His order was forwarded to the Clerk's office which dispatched notice of the order to the counsel for plaintiffs.

Later that same morning, counsel for plaintiffs appeared before the assignment judge calling his attention to the aforementioned circumstance. Upon oral motion of counsel, the judge entered an order vacating what he phrased his "inadvertent" order of dismissal and reinstated the case on his docket. The judge had explained to counsel at that time that he could not simply void his earlier order because it had already been directed to the Clerk's office. No notice of either the order of D.W.P. or subsequent order setting it aside and reinstating the cause was ever served upon defendants or their alleged counsel.

The case again reached the assignment call on November 18, 1965, it being assigned out on that date to the trial judge. On November 19, 1965, an ex parte hearing before that judge was conducted in defendants' absence, there resulting of even date, a judgment in default of appearance in the amount totaling $105,946. Notice of said judgment was served upon the defendants personally by certified mail.

Seventeen days after entry of judgment (December 6, 1965), defendants, by counsel, Edward Cody, filed a veri-

fied motion (as well as subsequent supplemental petitions by leave of court) to vacate and set aside the default judgment. The motion and petitions alleged among other grounds: (1) that defendants have a meritorious defense, (2) that the action against Anna Sobol was barred by the Statute of Limitations, (3) that both defendants are of foreign origin, being almost totally ignorant of the English language, (4) that since September of 1961 defendant, Daniel Sobol, has suffered from a disabling stroke, and (5) that neither defendants nor counsel had been apprised of the November 16th orders of dismissal, vacation, or reinstatement. After several hearings, defendants' motion was denied, from which they bring this appeal.

It is defendants' theory of the case that the trial judge abused his discretion in refusing to vacate his prior judgment because: (1) the case having been dismissed and subsequently reinstated without notice, all the proceedings to follow thereby were void, and (2) the motion was timely, averred a good and meritorious defense, and should have been granted in the interest of justice.

It is plaintiffs' theory of the case that the motion to vacate was properly denied because: (1) defendants have failed to show wherein they relied upon or were prejudiced by the order of reinstatement, (2) defendants, by Rule of Court, were not entitled to notice of a hearing on plaintiffs' motion for reinstatement, and (3) defendants' indifference toward the judicial process throughout is reflected in and manifestly supports the trial judge's exercise of discretion in denying their motion.

Regarding defendants' first theory, Edward Cody's failure to file a formal appearance on the standard court form provided, stands admitted. That fact notwithstanding, extensive argument has been offered in support of the proposition that Cody was, de jure, defendants' attorney of record from and after the date on which he had

filed the answers to interrogatories under his own name in Daniel Sobol's behalf.

The defendants' theory is lodged in Supreme Court Rule 7(1) (Ill Rev Stats (1965) c 110, par 101.7(1)) which requires notice of all motions, subsequent to the court process and complaint, to be served upon the attorney of record, in instances where service of such is incumbent upon the movant. Ostensibly at least, the importance of Rule 7(1) to the case at bar would appear to be more significant in view of plaintiffs' tacit admission that, in fact, no notice of their motion to vacate the order of dismissal had been served upon either defendant or Cody. We do not, however, consider this allegation to be dispositive of this particular issue.

A portion of our reason is found in Rule 2.1 of the Circuit Court of Cook County. That rule defines those notices which are required and provides for the service in the manner prescribed by Supreme Court Rule 7. Rule 2.1, in essence, was designed to embrace Supreme Court Rule 5(2) (Ill Rev Stats (1965) c 110, par 101.5(2)), upon which defendants rely, with slight, but consistent modifications for efficient implementation to the practice in the Circuit Court of the county.

It is important to point out that Rule 2.1, by use of the conjunctive, requires notice of all hearings on motions with but two exceptions; namely, (1) notice is not required in actions appearing on the daily trial call, and (2) otherwise, notice is required only upon persons who have appeared *and* who have not theretofore been found by the court to be in default for failure to plead. Were we even to accept defendants' contention that the first caveat does not apply by virtue of the severance of the instant case from the trial call at the moment the dismissal order was entered, we would, nonetheless, be compelled to adhere to the same conclusion.

■ As to defendant, Anna Sobol, the answer is inescapable. Put quite simply, she had, at no time prior to

proceedings of November 16, 1965, endeavored to file her appearance either pro se or by counsel. The only matters appearing in the common-law record in regard to either attorney Fusek or Cody, save the motion after judgment, concern themselves with representation of Daniel Sobol. Manifestly, neither Anna Sobol, and hence her attorney (if she had one), were entitled to notice within the contemplation of Rule 2.1.

As to Daniel Sobol, the question presented is somewhat more complex. Unlike his wife, he had filed his appearance on September 15, 1959, and answered to the first complaint. While he had since failed to answer to the amended complaint, thereby being technically in default, he had not, as of the date in question (November 16, 1965), been "found by the court to be in default for failure to plead," within the meaning of the Rule. Stidham v. Pappas, 78 Ill App2d 402, 406, 223 NE2d 318, 320 (1966). Such a determination, we note, was not made by the court until three days later, when the default judgment was entered by the judge before whom the ex parte hearing was had.

Defendants cite numerous cases in support of their contention that notice of a motion to set aside an order of dismissal for want of prosecution is necessary. They submit, absent the requisite notice, all subsequent proceedings are void and a nullity. A review of defendants' authorities impels no such conclusion, for in each of those cases the subject motion to vacate the dismissal order was made long after the expiration of the term-time of the respective courts in a manner much akin to the present day section 72 petition of the Civil Practice Act.

■ The distinction between post-judgment motions made within 30 days under section 50(6) of the Practice Act and those made subsequent to that term under section 72 can be readily made. As to the latter, the motion is not considered a continuation of the antecedent case, but rather the commencement of an entirely new cause of

action, hence the existence of formal requirements of notice of motion. Maierhofer v. Gerhardt, 29 Ill App2d 45, 172 NE2d 201 (1961) ; Chavez v. Elgin, J. & E. Ry. Co., 32 Ill App2d 68, 176 NE2d 664 (1961) ; Athletic Ass'n of University v. Crawford, 43 Ill App2d 52, 192 NE2d 556 (1963).

 As to the former however, the rule is quite to the contrary. A dismissal for want of prosecution is, in essence, an involuntary nonsuit and is a final and appealable order over which the trial court retains jurisdiction for a period of 30 days, to entertain motions such as plaintiffs' here. Ill Rev Stats (1965) c 110, par 50(6), Athletic Ass'n of University v. Crawford, supra. The court retains the inherent power to vacate any of its judgments within 30 days upon good cause shown. In re Estate of Smith, 41 Ill App2d 86, 190 NE2d 175 (1963) ; Gilmer v. Dunn, 59 Ill App2d 202, 208 NE2d 85 (1965).

 Assuming that either Daniel Sobol or his attorney were entitled to notice of plaintiffs' motion, the failure of such can be heard to have in no way vitiated or impaired the efficacy of the order of vacation and reinstatement nor rendered the subsequent proceedings a nullity. We observe (1) that plaintiffs' motion obviously was timely; (2) that defendants have failed to show wherein they relied upon or were prejudiced by plaintiffs' failure to appear; and (3) that Supreme Court Rule 5(4) which, as previously stated, is reflected in Circuit Court Rule 2.1, recites in unambiguous language:

"(4) Failure to deliver or serve copies as required by this rule does not in any way impair the jurisdiction of the court over the person of any party, . . . ." Ill Rev Stats (1965) c 110, par 101.5(4).

Stidham v. Pappas, supra. Hence, defendants' contention that all of the proceedings of court from and after November 16, 1965, were void is without merit.

Accordingly, the only question which remains concerns the propriety of the trial judge's denial of defendants' motion to vacate the ex parte judgment for plaintiff for $105,946, which, not unlike plaintiffs' earlier motion, had been filed well within the 30-day limitation of section 50(6). Only portions of the testimony and argument taken on the hearings on the post-judgment motion have been preserved and made part of the Report of Proceedings before this court. In such instances where, as here, the order appealed from recites, "the Court being fully advised in the premises," we must indulge in the presumption that the missing portions support the decision reached on the issues so presented. Vrandack v. Vrandack, 82 Ill App2d 339, 226 NE2d 391 (1967). We are, however, in no way precluded from considering those matters which do appear, for default judgments are based solely upon the techniques of procedure and are thus susceptible to close scrutiny by the court. Westmoreland v. West, 19 Ill App2d 161, 153 NE2d 275 (1958).

There can be no doubt that the courts of this State have encouraged an increasingly liberal approach to the question of vacation of default judgments on motion made within 30 days under section 50(6). The reasoning of the courts is possibly best enunciated in the case of Widicus v. Southwestern Elec. Cooperative, 26 Ill App2d 102, 167 NE2d 799 (1960), where the court stated:

> ". . . we do not believe that a court now must categorically determine that a meritorious defense or a reasonable excuse be proven to justify setting aside a default. We believe that the discretion will be properly invoked if it is based upon principles of right and wrong and is exercised for the prevention of injury and the furtherance of justice. . . .

> ". . . a court may well consider whether or not a defendant has a meritorious defense, and whether or

not defendant's delay . . . actually jeopardizes plaintiff's basic position. But, this should not be the only, nor necessarily, the determining factors. It seems to us that the overriding reason should be whether or not justice is being done. . . .

"The entering of a default is one of the most drastic actions a court may take. . . . In our judgment, a default should only be condoned when, as a last resort, it is necessary to give the plaintiff his just demand. It should be set aside when it will not cause a hardship upon the plaintiff to go to trial on the merits. . . .

"We do not say that a defendant who fails to act by reason of negligence or without any reasonable excuse has a right to insist that he be allowed to defend. . . ."

The subsequent case of Lynch v. Illinois Hospital Services, Inc., 38 Ill App2d 470, 187 NE2d 330 (1963), reaffirmed the liberal guidelines as promulgated in Widicus. The court there, moreover, established that it was no longer a requirement that a reviewing court, in reversing a denial of a motion to vacate a default, as a requisite thereto, determine, as a matter of law, that the trial court abused its discretion in making such a denial. Rather, the court there stated:

"We believe the overriding rule that should determine cases of this character, is whether or not justice is being done."

Put another way, the more recent trend of the courts is to subordinate the existence of a meritorious defense or excusable neglect to the primary goal of assuring that justice be served by affording the defaulted party his day in court. Sentry Royalty Co. v. Craft, 79 Ill App2d 410, 226 NE2d 282 (1967), 52 IBJ 820 (1964).

This is not to say, of course, that the court is unmindful of the fact that both Widicus and Lynch involved elements of neglect on the part of counsel, not his defaulted client. We do wish to point out, however, that in determining whether or not a default should be set aside is a question governed by the facts peculiar to each specific case and thus not bound by any steadfast precedent. Widicus v. Southwestern Elec. Cooperative, supra. In any event, inadvertence of counsel should not be heard to necessarily excuse a default or, on the other hand, bar its vacation. Mieszkowski v. Norville, 61 Ill App2d 289, 209 NE2d 358 (1965).

We do not ignore plaintiffs' charge that defendants are guilty of want of due diligence nor the evidence of record which would tend to support that conclusion. In response, we do, however, wish to give particular recognition to certain mitigating circumstances which do appear. The defendants are of foreign origin, so totally unversed in our language that their counsel could only communicate with them through an interpreter. While it has been argued at numerous junctures that defendants had been fully apprised of their rights and liabilities in regard to this matter, we are not at all convinced that defendants thereby comprehended the serious ramifications of their inaction. It further appears that Daniel Sobol has remained incapacitated since 1961, to the extent that he was of little or no assistance to his attorney. Defendants have alleged in detail in their motion, facts, which if proven, would constitute a good and meritorious defense. They are in no way chargeable with unreasonable or vexatious delay, or for that matter, any dilatory tactics whatsoever. The delay attendant to the instant proceedings is a creature simply of the trial backlog.

The proceedings, moreover, were not free of irregularity as plaintiffs would suggest. While it has been heretofore established that the failure of notice of plaintiffs' motion to set aside and reinstate as to Daniel Sobol did

not impair the jurisdiction of the court below, it does not necessarily follow that the defendant is precluded from asserting such an error as grounds for a vacation. See Moore v. Jones, 12 Ill App2d 488, 140 NE2d 387 (1956). Daniel Sobol should have been afforded notice of motion so that he could have argued in opposition thereto. The affirmative of the issue at that hearing was on plaintiffs to show good cause. Whether he would have availed himself of the opportunity is sheer conjecture.

We fail to envision wherein defendants' conduct has jeopardized plaintiffs' basic position, nor wherein plaintiffs will be prejudiced by having to prove up the allegations of their complaint at trial. Widicus v. Southwestern Elec. Cooperative, 26 Ill App2d 102, 167 NE2d 799 (1960). It is our opinion that the interests of doing substantial justice require that defendants be accorded their day in court.

For the above reasons, the order denying the motion and supplemental petition to vacate and set aside the default judgment is reversed and the cause is remanded with directions to the trial court to vacate the judgment and for further proceedings not inconsistent with the views expressed herein.

Order reversed and remanded with directions.

BURKE and BRYANT, JJ., concur.