**James T. Brewer, Plaintiff-Appellee, v. William M. Martin, Defendant-Appellant.**

**Gen. No. 52,310.**

First Judicial District.

May 22, 1968.

Rehearing denied July 1, 1968.

Mortimer, Nolan, O'Malley & Dunne, of Chicago (Patrick W. Dunne and Kieran P. O'Gallagher, of counsel), for appellant.

Peter Fitzpatrick, George Kaye, and Francis W. Gulbranson, of Chicago, for appellee.

ALLOY, P. J.

The genesis of this case was an alleged assault during a baseball game between the Cincinnati Redlegs and the Chicago Cubs on August 4, 1960. The defendant, William M. Martin, was a baseball player for the Cincinnati Redlegs and the plaintiff, James T. Brewer, was a pitcher for the Chicago Cubs. Martin was at bat with James Brewer pitching. The first pitch was near Martin's head. Following the second pitch, Martin's bat either left his hands or was thrown and landed between the pitcher's mound and the first base. Martin walked out apparently to retrieve his bat. An argument ensued

between Martin and Brewer. On the basis of the record, it appears that the parties both proceeded toward each other with clenched fists and that Martin struck Brewer in the face. A general melee or brawl then followed on the baseball field. There was some evidence that another member of the Cincinnati team also struck Brewer. Brewer sustained a broken orbital bone and fracture in the cheekbone area. The injury was a severe one and apparently impaired Brewer's ability to pitch thereafter.

Plaintiff Brewer and the Chicago Cubs corporation filed a civil action against defendant Martin for damages. Acting through Cincinnati attorneys, the Cincinnati Redlegs engaged a certain Chicago law firm to represent Martin and the Cincinnati organization initially paid this firm an attorney's fee. This Chicago law firm filed an appearance and answer and continued to represent Martin in the action, although there was very little activity and Martin had limited contact with this law firm. In December of 1960 this firm got in touch with Martin with respect to having his deposition taken. The deposition was taken in California in December of 1960. At the time of making such arrangements in 1960, Martin was still a member of the Cincinnati Redlegs, but just prior to the taking of the deposition he was traded by the Cincinnati Redlegs to the Milwaukee Braves. He thereafter was traded to the Minnesota Twins in Bloomington, Minnesota.

The cause was not reached for trial until 1966. During such six-year period there was no contact between Martin and the Chicago law firm which represented him, except with respect to the deposition in December of 1960 and on a couple of other occasions which will be referred to later in this recital of facts. During such period there were also various stories and reports carried in the news media to the effect that the lawsuit would be dropped. There was, however, no official notice of

any such dismissal given to defendant Martin. The record discloses that in a conversation between a representative of the Chicago law firm and Martin in 1960 at the time of the taking of the deposition, there was discussion of the possibility that Cincinnati Redlegs were not going to continue to pay Martin's attorneys since he had been traded by Cincinnati. This firm, however, continued as Martin's counsel until 1966 without contact, so far as the record discloses, either verbal or written, with defendant Martin.

As trial time approached, the Chicago law firm, realizing they were not going to be paid by Cincinnati Redlegs and because Martin himself had not offered to pay them, made plans to withdraw as counsel for Martin. On April 14, 1966, a member of this Chicago law firm, which represented Martin, wrote Martin in care of the Minnesota Twins in Bloomington, Minnesota, and advised Martin that the Cincinnati Redlegs had refused to pay the attorney's fees since Martin was traded to Milwaukee. The letter then continued as follows:

"I have not formally withdrawn from the case because from time to time Plaintiff's attorneys have suggested that the case would be dismissed. I have been informed today that the insurance company which paid Brewer's doctor bills is insisting that the case be tried.

"The case will probably be on the trial call subject to trial in a week to ten days. However since you, the Plaintiff, and the witnesses are baseball people, I anticipate no difficulty in having the case continued for trial until the end of the baseball season.

"This letter is to inform you that I can no longer continue to act as your attorney without adequate fee arrangements. After the case has been continued I shall make a motion to withdraw from the

case. I would suggest that you immediately make arrangements for another lawyer to act in my place. Unless you secure counsel a default judgment can be entered against you which will, of course, endanger any assets you may have and would make your present salary subject to whatever legal procedures are available in Minnesota."

The letter was sent by Registered Mail and the return receipt showed the signature of a girl who worked in the Minnesota Twins' office. Martin acknowledged receipt of this letter and talked with a representative of the Minnesota Twins, his employer, at that time, about the lawsuit. He was told not to worry about the case as it would probably be dropped.

Thereafter, on May 23, 1966, a member of the same Chicago law firm sent Martin a Registered Letter containing a notice that the firm would appear in court on June 3, 1966, and move to withdraw as his attorneys. A girl in the office of the Minnesota Twins signed the return receipt. Defendant Martin asserted that he never saw or heard of this notice. On June 3, 1966, an order was entered allowing the Chicago law firm to withdraw as his attorneys and this firm then sent Martin a copy of such order by ordinary mail. Martin states that he never actually received a copy of such order. The Chicago law firm which had withdrawn then wrote the attorneys for plaintiff stating that they "assume that no action will be taken in the case without giving Mr. Martin himself notice at his address: William Martin, c/o Minnesota Twins, Bloomington, Minnesota." Apparently, no copy of this letter was sent to Martin. Martin had no further actual knowledge of the status of the lawsuit until after the default judgment.

As the case came up for trial, a jury was impaneled and heard evidence presented by the plaintiff only. No one appeared for Martin. The jury returned a verdict

of $100,000 against Martin and specifically found that malice was the gist of the action. Judgment was entered upon the verdict by the court on November 28, 1966. Defendant Martin, who apparently heard of the action only after newspaper publicity brought it to his attention, immediately retained attorneys who filed a post-trial motion upon his behalf within 30 days after the entry of such judgment. These attorneys now represent Martin in the present proceeding. The motion sought to set aside the judgment under section 50(6) of the Civil Practice Act (1965 Illinois Revised Statutes, c 110, § 50 (6)). Following a hearing on the motion the trial judge reduced the judgment to $35,000 but retained the finding that malice was the gist of the action and also refused to set aside the default judgment. It is from such action of the court that defendant Martin has now appealed to this Court.

The issue before the Court is whether the trial court properly exercised its discretion in refusing to set aside the default judgment as against the defendant Martin. On appeal in this Court, defendant asserts that the determination of whether or not a court should set aside a judgment in the nature of default should be resolved so as to do substantial justice between the parties with the objective in mind of carrying out insofar as it is possible the determination of the matters involved on their merits. Defendant recognizes that in resolving this problem a court may well consider whether or not a defendant has a meritorious defense and whether or not defendant's delay in responding to the court's command actually jeopardized plaintiff's basic position. Defendant vigorously contends that the overriding reason, however, should be whether the result is fair and just. It is pointed out that a default is one of the most drastic actions a court may take to punish for disobedience, and unless there is a flagrant disregard

of the court's command, a default (particularly with malice as the gist of the action) should be set aside on a motion made within 30 days of a judgment entry.

The issue which is presented in this case has been the subject of much analysis and discussion in recent cases in the State of Illinois. A general rule had evolved that a prompt application within a period of 30 days after entry of judgment should normally justify setting aside a default judgment, if there was a showing of a reasonable excuse for not having appeared or made a defense within the proper time, and also that the moving party had a meritorious defense.

The courts of this State in determining these issues have, however, outlined standards which primarily stress the basic concept of fundamental fairness and the furtherance of justice rather than compliance with certain rigid standards. In Widicus v. Southwestern Elec. Cooperative, Inc., 26 Ill App2d 102, 167 NE2d 799, the court emphasized the rule of fairness and the furtherance of justice and stated (at page 108):

"In view of the fact that the statute, as it now stands, does not contain the requirement that good and sufficient cause appear, we do not believe that a court now must categorically determine that a meritorious defense or a reasonable excuse be proven to justify setting aside a default. We believe that the discretion will be properly invoked if it is based upon principles of right and wrong and is exercised for the prevention of injury and the furtherance of justice. . . .

"The question of whether or not a court should set aside a default should be so resolved as to do substantial justice between the parties and with the idea in mind of carrying out, insofar as it is possible, the determination of matters upon their merits. In resolving this problem, a court may well consider

60

whether or not a defendant has a meritorious defense, and whether or not defendant's delay in responding to the court's command actually jeopardizes plaintiff's basic position. But this should not be the only, nor necessarily, the determining factors. It seems to us that the overriding reason should be whether or not justice is being done. Justice will not be done if hurried defaults are allowed any more than if continuing delays are permitted. But justice might, at times, require a default or a delay. What is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome."

In the Widicus case the court had indicated that this consideration is addressed to the sound discretion which the court is required to exercise in considering a motion to set aside a default. Succeeding cases have reiterated the same principles as expressed in the Widicus case (Kehrer v. Kehrer, 28 Ill App2d 296, 171 NE2d 239; Lynch v. Illinois Hospital Services, Inc., 38 Ill App2d 470, 187 NE2d 330).

■ The basic concept with which the courts are concerned is that of attaining justice through the exercise of fairness to both parties. In this connection, necessarily, the court can and should examine into such considerations as the reasons for failure to present a timely defense and also whether a reasonable basis for a meritorious defense in fact exists. Another important consideration is the determination of whether or not setting aside the default will operate as a hardship on the party who obtained the default judgment. As stated in Mieszkowski v. Norville, 61 Ill App2d 289, 209 NE2d 358 (at pages 297–298):

"The setting aside of such judgment should be tested by the principle of fundamental fairness, and should be an exercise of the court's discretion,

61

wherein it seeks the prevention of injury and the furtherance of justice. In exercising this discretion, it is essential that the court ascertain if some reason exists for the failure to present a defense in apt time; that the court decide whether some meritorious defense exists so that vacating the judgment will not be a patently useless act; and that the court determine if some particular hardship will result to the plaintiff. These determinations should be made, however, within the framework of the legal philosophy that litigation should be determined on its merits, if possible, and according to the substantive rights of the parties. Rights should be determined by default only as a last resort."

In applying the tests to which we have referred, and which have been summarized in Mieszkowski v. Norville, supra, we must conclude that there was in effect an improper application of the court's discretion when it failed to set aside the default judgment in the case before us. The record in the instant case indicates that there was no knowledge on the part of defendant that the case was coming up for trial at the time it was tried. There was actually no showing that defendant knew that he was not being represented by an attorney at the time. Defendant lived over 500 miles from Chicago and apparently was not familiar with legal proceedings since he was a baseball player and had no legal training. So far as the records of the court were concerned they disclose that defendant's attorneys had withdrawn so that the trial court could presume that defendant was without an attorney. There was no correspondence or testimony to show that defendant actually knew that he did not have an attorney. There was no showing of any notice transmitted by plaintiff to defendant of the type referred to in the letter from the Chicago attorneys who had with-

drawn when they sent a notice of withdrawal to attorneys for plaintiff.

On the basis of the record before us, there was also enough evidence to show that a question of fact was raised as a result of the conduct of plaintiff and defendant prior to the injury to plaintiff and the words of provocation which were alleged to have been asserted during the baseball game might have been considered sufficient to indicate the probability of a meritorious defense. Since this was an unusual case, it appears to us that a special effort should have been made to avoid a determination by default unless a strong showing was made of failure on part of defendant to respond to the commands of the court.

The defendant was in no respect responsible for the delay of the six-year period before trial. The relative inactivity in the progress of the suit during all this period of time would also have tended to lull defendant into believing that the cause was either being disposed of or not being pushed aggressively, and that he would be advised in time to make arrangements to defend. It is notable that when the publicity disclosed the entry of a judgment against him, defendant acted promptly in retaining attorneys personally. The record also indicated nothing which would justify the conclusion that plaintiff would be jeopardized by having the case tried upon its merits.

██ ██ We recognize the broad discretion of a trial judge in determining a motion of the type under consideration in this case. On the record, it appears that defendant was neither advised that he was without attorneys representing him nor did he know when the case was going to be reached for trial. We feel, therefore, that the basic principle of fairness and furtherance of justice, on the basis of the record before us, requires that this cause be reversed. This cause will, accordingly,

be reversed and remanded to the Circuit Court of Cook County with directions to set aside the default judgment heretofore entered herein and to proceed with trial and disposition of this cause with reasonable dispatch.

Reversed and remanded.

STOUDER and HOFFMAN, JJ., concur.