ACCURATE HOME SUPPLY, INC. *et al.*, Plaintiffs-Appellees, *v.* GERARDO MALPEDE *et al.*, Defendants-Appellants.

(No. 57445;

First District (1st Division)—June 4, 1973.

Adamowski, Newey & Riley, of Chicago, (Francis X. Riley, of counsel,) for appellants.

Robert R. Napoleon, of Chicago, for appellees.

Mr. JUSTICE HALLETT delivered the opinion of the court:

This is an appeal by the defendants from a decree foreclosing a mechanic's lien on property of the defendant Jennie Malpede and entering a personal judgment against the defendants Nicholas and Annette Ferri, who were tenants, thereon.

On January 14, 1970, the corporate plaintiff and its president (hereinafter called plaintiff) filed suit against Gerardo Malpede, his wife Jennie Malpede, their daughter Annette Ferri and her husband Nicholas Ferri to foreclose a mechanic's lien on certain improved real estate owned by the Malpedes and occupied by them and the Ferris. The sheriff's return shows personal service on Annette and abode service on the others by serving her as a member of their families on January 24, 1970, and by mailing.

On July 29, 1970, notice was given by mail to all four by the plaintiff's attorney that on August 6, 1970, he would move to default them for failure to appear or answer. On that date an attorney, Joseph A. Malek, appeared and he was given leave to file an appearance and answer for the four defendants within 21 days. On September 29, 1970, the case was dismissed for want of prosecution on a call of the calendar.

On October 20, 1970, the plaintiff's attorney sent written notice by mail to the said attorney (who never did file an appearance or answer) that he would, on October 23, 1970, move to vacate the said dismissal and to default the defendants for failure to plead or answer. The court on that day vacated the dismissal, defaulted the defendants, ordered that the complaint to foreclose be taken as confessed and ordered that the matter be proved up on the regular motion call.

Thirteen months later, on November 30, 1971, both attorneys met in court to prove up the plaintiff's claim. Attorney Malek initially stated that he had had little cooperation from his client Nicholas Ferri and that he had not talked to the Malpedes or advised them that their property was in jeopardy and asked for a continuance so that he could notify them by registered mail that he was asking leave to withdraw as their

attorney. The court denied a continuance and suggested that he move to withdraw later. The plaintiff's attorney then proceeded with the prove up, at the conclusion of which attorney Malek told the court that someone had, with his permission, used his name on an appearance, and that, although he had written them once in about September of 1970, he had never seen or had any contact with any of his clients since that time.

On December 2, 1971, attorney Malek served notice by mail on all four clients that on February 14, 1972, he would ask leave to withdraw as their attorney but on December 14, 1971, on the basis of said notice for February he was given leave to withdraw as their attorney.

On December 29, 1971, attorneys Adamowski, Newey and Riley moved for leave to file their appearance as attorneys for the defendants and to vacate the judgment "heretofore entered" (actually none had as yet been entered). An order was entered substituting them as attorneys, entering the motion to vacate, giving the defendants until January 28, 1972, to file supporting data, giving the plaintiffs until February 19, 1972, to file memorandum in opposition and conditioning the order upon the defendants' paying $250 in attorney's fees by February 1, 1972. It recited that the order was without prejudice to the plaintiff's right to present the decree.

On January 7, 1972, without any proof of service of notice of such a motion, the plaintiff's attorney presented a decree, which motion was entered and continued to January 13, 1972, without further notice. On that date a decree of foreclosure was entered against all four defendants including personal judgments against Nicholas and Annette Ferri for $3,158.14 plus costs. An oral motion to vacate was entered and continued to February 22, 1972, but the order of December 30, 1971, except par. 4 (relating to presenting a decree) was reentered and affirmed.

On February 10, 1972, after paying the $250 attorney's fees required by the order of December 30, 1971, Nicholas Ferri filed his affidavit stating in substance, that he employed attorney Malek to defend the action and delivered all papers to him; that Malek never asked for any additional information or action and that he assumed that his rights were being defended; and that Malek did not advise him of any defaults or notices until after the prove up. This affidavit also recited that Gerardo Malpede, his father-in-law (and a defendant against whom the decree ran), had been dead for more than ten years; that the plaintiff's original offer to do the job for $4,490 complete was rejected by the affiant who offered to supply the material; that the plaintiff then agreed to do the job for the difference between the materials and that figure; and that there never was any discussion of time and materials. It further recited

that the affiant himself purchased all materials used on the job; that money ($1,149.95) was paid to the plaintiff in advance; that the plaintiff never gave affiant any invoices; that throughout the project there was only one man on the job, the plaintiff's brother-in-law, Tony; that on one occasion a second man, an apprentice, was there, and, on another occasion, three men were there to hang one door; that the plaintiff never removed any walls or did any siding work and did not even clean up after the job; that when the plaintiff no longer had anyone on the job the affiant refused to pay any more; that the materials furnished and the money paid more than compensated the plaintiff for the labor of installation; and that no money was due and owing to the plaintiff for work on the premises.

On February 17, 1972, another affidavit by Annette Ferri was filed. It corroborated her husband's affidavit and added that her husband also paid for all plumbing supplies and the plumber's labor costs.

On February 22, 1972, the plaintiffs filed a four page unsworn "answer" to the defendants' motion to vacate, attacking the defendants' affidavits on the grounds that they were irrelevant, untrue, contradictory, incompetent and conclusory.

On that same day, the court entered a final order vacating so much of the decree of January 13, 1972, as ordered relief against the deceased Gerardo Malpede, but denying the defendants' motion in all other respects. This appeal followed.

Section 50 (5) of the Civil Practice Act (Ill. Rev. Stat. 1963, ch. 110, par. 50 (5)), provides that a court may set aside a judgment on a motion made within thirty days "upon any terms and conditions that may be reasonable."

■■ The leading case on such motions is *Widicus v. Southwestern Elec. Cooperative* (1960), 26 Ill.App.2d 102, 167 N.E.2d 799, where, in reversing the trial court's refusal to vacate a default judgment in a personal injury case, the court at pages 108-109, said:

> "In view of the fact that the statute, as it now stands, does not contain the requirement that good and sufficient cause appear, we do not believe that a court now must categorically determine that a meritorious defense or a reasonable excuse be proven to justify setting aside a default. We believe that the discretion will be properly invoked if it is based 'upon principles of right and wrong and is exercised for the prevention of injury and the furtherance of justice.
>
>          \*   \*   \*
>
> The question of whether or not a court should set aside a default should be so resolved as to do substantial justice between

the parties and with the idea in mind of carrying out, insofar as it is possible, the determination of matters upon their merits. In resolving this problem, a court may well consider whether or not a defendant has a meritorious defense, and whether or not defendant's delay in responding to the court's command actually jeopardizes plaintiff's basic position. But this should not be the only, nor necessarily, the determining factors. It seems to us that the overriding reason should be whether or not justice is being done. Justice will not be done if hurried defaults are allowed any more than if continuing delays are permitted. But justice might, at times, require a default or a delay. What is just and proper must be determined by the facts of each case, not by a hard fast rule applicable to all situations regardless of the outcome.

The entering of a default is one of the most drastic actions a court may take to punish for disobedience to its commands. The court has other powers which are ample in most instances. In our judgment, a default should only be condoned when, as a last resort, it is necessary to give the plaintiff his just demand. It should be set aside when it will not cause a hardship upon the plaintiff to go to trial on the merits."

This case has been cited and followed in the following decisions by various appellate courts throughout the State: *Lynch v. Illinois Hospital Services, Inc.*, 38 Ill.App.2d 470, 473-474, 187 N.E.2d 330; *Wolder v. Wolder*, 30 Ill.App.2d 98, 101, 173 N.E.2d 546; *Trojan v. Marquette Nat. Bank*, 88 Ill.App.2d 428, 437-438, 232 N.E.2d 160; *Mieszkowski v. Norville*, 61 Ill.App.2d 289, 293-294, 209 N.E.2d 358; *Sentry Royalty Co. v. Craft*, 79 Ill.App.2d 410, 418-419, 226 N.E.2d 282; *Adams v. Grace*, 128 Ill.App.2d 69, 76-77, 262 N.E.489; *Megan v. L. B. Foster Co.*, 1 Ill.App.3d 1036, 2039, 275 N.E.2d 426.

In *People ex rel. Reid v. Adkins* (1971), 48 Ill.2d 402, 270 N.E.2d 841, our Supreme Court, referring to C.P.A. par. 50 (5), at page 406, said:

"* * * Under this section, it is no longer necessary that such relief be sought on the precise grounds that there is a meritorious defense and a reasonable excuse for not having timely asserted such defense. The overriding consideration now is whether or not substantial justice is being done between the litigants and whether it is reasonable, under the circumstances, to compel the other party to go to trial on the merits. *Trojan v. Marquette National Bank*, 88 Ill.App.2d 428, 437, 438; *Mieszkowski v. Norville*, 61 Ill. App.2d 289, 294, 295; *Widicus v. Southwestern Electric Cooperative, Inc.*, 26 Ill.App.2d 102, 108-111."

Perhaps the most recent case on this subject is *Knight v. Kenilworth Insurance Co.* (1971), 2 Ill.App.3d 493, 275 N.E.2d 470, where, in reversing a judgment and remanding the cause with directions to vacate the judgment and to allow the defendant to answer or plead to the complaint, the court at page 495, said:

"Early in the common law of Illinois, it was established that the setting aside of a default judgment within term time (30 days) is generally a discretionary matter for the trial court; however, the exercise of that discretion is subject to review, *Scales et al. v. Labar et al.,* (1869), 51 Ill. 232. During this same period, it was further established that trial courts should be liberal in setting aside default orders within term time when it appears that justice will be promoted. (*Mason v. McNamara et al.* (1870), 57 Ill. 274, 277.) Prior to 1933, it was necessary that a meritorious defense and good excuse be shown. Today these are not necessary but are factors, as is hardship suffered by the plaintiff, which the court may take into account in resolving the more basic determination of dispensing justice between the parties. *Widicus v. Southwestern Elec. Cooperative* (1960), 26 Ill.App.2d 102, 108-109.

The reviewing court need not determine, as a matter of law, that the trial court abused its discretion, but only resolve the question of whether justice has been served, *Trojan v. Marquette Nat. Bank* (1967), 88 Ill.App.2d 428, 438. 'What is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome.' (*Widicus, supra,* 109.) From the facts in this case, we are of the opinion that justice will be accomplished by allowing the defendant his day in court."

■■ Applying these principles to the facts of this case as outlined above, we are of the considered opinion that substantial justice will best be accomplished by allowing the defendants to have their day in court. It should be noted that, in the case at bar, the defendants' attack, through new counsel, began even before the decree was entered, that their motion to vacate the decree was made on the same day on which the decree was entered and that they paid, as the court ordered as a condition to their even filing their motion, $250 attorney's fees to the plaintiff's attorney.

We, therefore reverse the judgment and decree and remand the cause with directions to vacate the default and to allow the defndants to answer or plead to the complaint.

Judgment and decree vacated and cause remanded with directions.

GOLDBERG and EGAN, JJ., concur.